[No. C053289. Third Dist. June 10, 2008.]

LIBERTY MUTUAL FIRE INSURANCE COMPANY, Plaintiff, Cross-defendant and Respondent, v. LcL ADMINISTRATORS, INC., Defendant, Cross-complainant and Appellant.

**COUNSEL**

The Mounier Law Firm, John F. Mounier, Jr.; Law Office of Ted W. Pelletier and Ted W. Pelletier for Defendant, Cross-complainant and Appellant.

Bullivant Houser Bailey and Ronald L. Richman for Plaintiff, Cross-defendant and Respondent.

OPINION

**BUTZ, J.**—In this ordinary breach of contract action by plaintiff Liberty Mutual Fire Insurance Company (Liberty) to recover workers' compensation insurance premiums, defendant LcL Administrators, Inc. (LcL), filed an answer and cross-complaint alleging that Liberty mishandled its claims.

Liberty propounded simple, straightforward interrogatories, asking for witnesses, documents and evidence to support LcL's affirmative defenses and cross-claims. Each time, LcL gave vacuous, meaningless responses. Frustrated with LcL's continued stonewalling, the trial court granted Liberty's motion for terminating sanctions, striking both the answer and the cross-complaint.

LcL appeals from the resulting judgments, claiming that the trial court abused its discretion in granting terminating sanctions because (1) the court's finding that LcL "willfully" failed to comply with discovery was not supported by substantial evidence; (2) even if the discovery violations were willful, terminating sanctions were unwarranted because these derelictions did not prejudice Liberty's ability to try the case; and (3) the sanctions were excessive because they were punitive in nature and addressed past conduct that had already been sanctioned. We shall affirm the judgments.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.  The Pleadings

On August 8, 2004, Liberty filed a complaint for breach of insurance contracts and common counts, seeking to recover premiums due on a series of workers' compensation insurance policies issued to LcL by Liberty or its predecessor in interest, Employers Insurance of Wausau, a Mutual Company. The complaint alleged that the policies issued to LcL contained a variable dividend and retrospective rating plan based on the number of claims experienced. Depending on the level of loss, LcL would either be entitled to a refund or obligated to pay an increase in the base premium. According to the complaint, LcL's loss history on these policies generated additional premiums due in the amount of $549,165.

LcL filed an answer to the complaint, generally denying the allegations and raising 28 affirmative defenses, including breach of contract, breach of fiduciary duties and bad faith. On April 15, 2005, LcL filed a first amended

cross-complaint captioned, "Bad Faith, Mishandling of Claims, Breach of Contract" (hereafter cross-complaint). The cross-complaint asserts that Liberty failed to properly handle the workers' compensation claims; failed to properly defend LcL with respect to claims of work-related injury; failed to properly investigate and settle the claims; and breached its duty of good faith and fair dealing toward its insured, all resulting in damages in excess of $500,000. The cross-complaint prayed for general and special damages according to proof, as well as punitive damages.

## II.  Discovery History

### A.  Motion to Strike the Answer

On October 22, 2004, Liberty served its first set of interrogatories. "Form Interrogatory No. 15.1" requested that LcL state all facts on which it based its denial and affirmative defenses in the answer. It further asked LcL to identify all persons who had knowledge of these facts, and to specify all documents that supported LcL's denial and affirmative defenses.

#### 1.  First response.

LcL asked for and was granted two extensions of time to respond to Liberty's interrogatories. On January 14, 2005 (all further unspecified references are to that calendar year), LcL finally served responses. Form Interrogatory No. 15.1 was answered in the following manner: "The statutory denials are based upon the authorization of the Code of Civil Procedure, and a belief that the contracts of insurance were improperly implemented and interpreted by Plaintiff [Liberty]; as [Liberty] provides responses to discovery, [LcL] will be able to detail the specific areas of breach."

On February 16, after its "meet and confer" letter was ignored, Liberty filed a motion to compel answers to interrogatories and for imposition of monetary sanctions. The motion was granted. Finding the response to Form Interrogatory No. 15.1 "inadequate and evasive," the trial court ordered LcL to provide a supplemental response on or before April 4 and imposed monetary sanctions. LcL requested and received an extension of time to serve these supplemental responses until April 15.

#### 2.  Supplemental response.

On April 15, LcL served its supplemental response to Form Interrogatory No. 15.1. As to the basis for LcL's denial, the response again recites: "The statutory denials are based upon the authorization of the Code of Civil Procedure (§ 431.30[, subd.] (d)), and a belief that the contracts of insurance

were improperly implemented and interpreted by Plaintiff [Liberty]; as [Liberty] provides responses to discovery, [LcL] will be able to detail the specific areas of breach."

For each of the 28 affirmative defenses, LcL gave substantially similar responses: The defense was based "[o]n information and belief, to be developed during discovery"; the witnesses "are actually known to [Liberty] and subject to being developed in discovery by [LcL]" and "are the [Liberty] employees and agents who sold, administered, and implemented" the policies referred to in the complaint; and the supporting documents "consist of time records of the [Liberty] employees who worked on the claims," as well as the "writings received, reviewed, drafted and compiled" by these same employees and agents.

On April 20 and May 18, Liberty sent meet and confer letters, advising LcL that the supplemental responses were inadequate and did not constitute "complete and straightforward response[s] as required by [Code of Civil Procedure section] 2030[, subdivision] (f)(1)." The letters also warned that Liberty was prepared to proceed with a further motion to compel and to seek issue and monetary sanctions.

3. *Second supplemental response.*

On June 13, Liberty filed a motion for issue and monetary sanctions. On July 13, the court denied the request for issue sanctions, granted the request for monetary sanctions and gave LcL a final opportunity to provide straightforward answers, stating that "[w]hile the Court concurs that the answers given are evasive and incomplete, it also finds, in the exercise of its discretion, that [an issue sanction] is appropriate only after other options have been exhausted." The ruling continued: "The court will require a further verified supplemental response to [Form] [I]nterrogatory [No.] 15.1, containing substantive information as to its general denial and affirmative defenses. If the further supplemental answers remain devoid of substantive information and continue to be unverified,[1] the Court will entertain a motion to strike the affirmative defenses at a later date."

On August 15, LcL served its second supplemental response to Form Interrogatory No. 15.1. The response referred to "a belief that the contracts of insurance were improperly implemented and interpreted" by Liberty, and

---

[1] LcL insists that, contrary to the trial court's finding, a *verified* response to the supplemental responses was in fact served. However, whether a verified response was actually served in this instance was not pursued in subsequent proceedings and is not at issue here.

gave the policy number of every insurance policy at issue. To answer further, LcL asserted, would require it to "make a compilation or summary of information contained in [Liberty's] writings regarding the workers['] compensation claims" and "no such compilation currently exists, in part because [Liberty] has delayed and failed to produce requested documents, and has not yet produced all the writings in its possession regarding the claims referred to." LcL named 65 witnesses with "knowledge of these facts," none of whom were associated with LcL, but rather were employees of Liberty or hospital and medical providers. The response to the request for identification of documents stated that the documents were in the possession of Liberty and contained an offer to "make . . . available for further review" previously produced documents so that Liberty could make its own "compilation or summary."

On September 1, Liberty wrote a final meet and confer letter, warning that a motion to strike LcL's answer would follow if meaningful responses were not delivered. LcL requested that Liberty withhold making a motion, promising to provide a third supplemental response by September 20, but it never did so.

4. *Motion to strike answer.*

On September 27, Liberty brought its third motion, this time asking for issue and/or terminating sanctions. Although a hearing on the motion was originally set for November 8, it was postponed until February 7, 2006, allowing LcL additional time to review Liberty case files.

LcL opposed the motion with declarations from two experts who had examined Liberty's files. Eleanor Good, LcL's controller, who was previously identified in discovery as its "person most knowledgeable," stated that since LcL's original discovery responses, she discovered that Liberty was "up-charging" LcL "by rounding actual expenses up to the next *highest* dollar when the claim is closed," instead of "to the *nearest* dollar."

Robert Drake identified himself as a "workers' compensation consultant and expert witness." He declared that he had begun review of documents produced by Liberty in December 2005. Drake said it was "shocking" to learn that Liberty did not have a written policy and procedure manual. Based on a recent partial review of Liberty's case files, he opined that Liberty "breached the standards of workers' compensation claims handling" by failing to have certain office safeguards in place during the handling of

claims. The declaration concludes: "I have formed the preliminary opinion that economic damages have certainly been suffered by LcL Administrators, Inc. and the amount will be determined when the remaining unproduced documents are available and the evaluation is completed."

The trial court granted Liberty's motion for terminating sanctions. After documenting the history of LcL's noncompliance with discovery, the court ruled that LcL had abused the discovery process by repeatedly providing evasive and incomplete responses and by ignoring Liberty's meet and confer letter requesting a third supplemental response. The court also rejected LcL's claim that Liberty, not LcL, had the information and documents necessary to provide the responses, noting that "[a]fter [16] months of litigation, LcL should have some factual basis for its [28] affirmative defenses and its general denial." The court ordered the answer stricken and awarded Liberty monetary sanctions against LcL and its counsel.

Once the answer was stricken, Liberty obtained a default judgment for $512,518 in unpaid premiums, plus interest and costs.

### B. Motion to Strike the Cross-complaint

The events leading up to the court's order to strike LcL's cross-complaint followed a similar path as the motion to strike the answer. In February 2005, Liberty propounded "Special Interrogatories, Set No. Two" (hereafter special interrogatories) seeking to discover the factual basis and supporting documents for LcL's allegation that it suffered losses as the result of Liberty's improper handling of workers' compensation files.

LcL initially failed to serve *any* response to the special interrogatories, despite receiving an extension of time until April 15. Thus, on April 29, Liberty filed a motion to compel responses.

On May 17, prior to the hearing on the motion, LcL served a response declaring that Liberty had not allowed LcL to inspect the documents that would support its allegations. Due to this alleged lack of ability to inspect documents, LcL claimed that it was unable specifically to identify entries that it considered improper or unfair. LcL also stated that bad faith damages had not been calculated, and that "[a]s investigation progresses, [LcL] will be able to identify the scope, type, nature and character of damages that it has suffered, including [bad faith damages]."

On July 1, the trial court granted Liberty's motion and ordered responses served, without objections, by July 13. LcL again failed to serve responses. Consequently, on July 28, Liberty brought a second motion to compel, to which LcL filed a statement of nonopposition. On August 29, the trial court granted the motion and ordered LcL to serve responses by September 9.

On September 9, LcL served further responses to the special interrogatories. LcL again claimed it had "been restricted in its capacity" to identify documents supporting its claims and that Liberty had "not allowed" LcL to inspect Liberty's accounting records, ledgers, correspondence files, books, and other writings relating to the subject insurance policies;[2] that the "documents, records, ledgers, correspondence and numbers" in possession of Liberty would disclose a "systematic and unfair practice [of] overcharging of costs and expenses"; that LcL's bad faith damages "have not currently been calculated [or] quantified"; and that it was "not in a position" to state how damages were calculated.

On October 5, Liberty sent out a final meet and confer letter asserting that the further responses were evasive and incomplete and stating its intention to move forward with a motion to strike the cross-complaint.

On October 19, Liberty filed a motion to strike the cross-complaint on grounds that LcL had abused the discovery process by its failure to provide complete and straightforward responses as ordered by the court.

On February 7, 2006, the motion to strike the cross-complaint was heard jointly with the motion to strike the answer, and LcL opposed both motions with the declarations of Good and Drake, which we have previously summarized.

On February 9, 2006, the trial court granted the motion and struck LcL's cross-complaint. The court ruled that LcL's supplemental responses were "devoid of any substantive information and are evasive and incomplete as the responses fail to identify any witnesses, documents or facts supporting the amount of alleged contract damages and alleged bad faith damages that LcL is claiming against [Liberty] in [the cross-complaint]." The court also observed that "[w]hen LcL's Person Most Knowledgeable was deposed, she had no information on damages or on LcL's contention that its claims were not fairly and adequately handled."

---

[2] These assertions were made, despite the fact that LcL had yet to propound any discovery in the case.

Noting that LcL not only repeatedly gave deficient responses but also failed to meet and confer, the court ruled that LcL's conduct constituted "a flagrant abuse of the discovery process," warranting terminating sanctions.

### C. Motions for Reconsideration and Motion for New Trial

Subsequently, LcL filed motions for reconsideration of the trial court's orders striking the answer and cross-complaint. Finding no legal basis to reconsider its orders, the court denied both motions.

LcL then filed a motion for new trial, which was similar in many respects to the motions for reconsideration. Finding "LcL's arguments . . . no more convincing now than they were before," the trial court denied the motion for new trial.[3]

## DISCUSSION

### I. Terminating Sanctions and the Standard of Review

Code of Civil Procedure section 2023.010[4] classifies misuses of the discovery process to include, "(d) Failing to respond or to submit to an authorized method of discovery. [¶] (e) Making, without substantial justification, an unmeritorious objection to discovery. [¶] (f) Making an evasive response to discovery. [¶] (g) Disobeying a court order to provide discovery. [¶] (h) Making or opposing, unsuccessfully and without substantial justification, a motion to compel or to limit discovery [and] [¶] (i) Failing to confer in person, by telephone, or by letter with an opposing party or attorney in a reasonable and good faith attempt to resolve informally any dispute concerning discovery . . . ."

Section 2030.290 provides in relevant part: "The court shall impose a monetary sanction under Chapter 7 (commencing with Section 2023.010) against any party, person, or attorney who unsuccessfully makes or opposes a motion to compel a response to interrogatories, unless it finds that the one subject to the sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust. *If a party then fails*

---

[3] Because LcL has not set forth any separately discernible argument that the motions for reconsideration and new trial were erroneously denied, we focus strictly on the propriety of the court's orders striking the answer and cross-complaint.

[4] Undesignated statutory references are to the Code of Civil Procedure.

*to obey an order compelling answers, the court may make those orders that are just, including the imposition of an issue sanction, an evidence sanction, or a terminating sanction* under Chapter 7 (commencing with Section 2023.010). . . ." (§ 2030.290, subd. (c), italics added.) Section 2023.030, subdivision (d)(1) expressly authorizes the court to "strik[e] out the pleadings" of any party misusing the discovery process.

We review discovery orders for an abuse of discretion. (*People ex rel. Lockyer v. Superior Court* (2004) 122 Cal.App.4th 1060, 1071 [19 Cal.Rptr.3d 324].) Sanction orders are "subject to reversal only for arbitrary, capricious or whimsical action." (*Sauer v. Superior Court* (1987) 195 Cal.App.3d 213, 228 [240 Cal.Rptr. 489]; see also *Lang v. Hochman* (2000) 77 Cal.App.4th 1225, 1244 [92 Cal.Rptr.2d 322], quoting *Kuhns v. State of California* (1992) 8 Cal.App.4th 982, 988 [10 Cal.Rptr.2d 773] [" 'In choosing among its various options for imposing a discovery sanction, a trial court exercises discretion, subject to reversal only for manifest abuse exceeding the bounds of reason.' "].) " ' "Only two facts are absolutely prerequisite to imposition of the sanction: (1) there must be a failure to comply . . . and (2) the failure must be wilful . . . ." ' " (*Vallbona v. Springer* (1996) 43 Cal.App.4th 1525, 1545 [51 Cal.Rptr.2d 311].)

## II. Trial Court's Finding of "Willfulness"

LcL first contends that the trial court's finding that it "willfully" violated discovery orders was not supported by substantial evidence in the record. LcL reasons that the finding of willfulness was predicated on a finding that it was being "evasive," a finding that lacked supporting evidence because LcL gave Liberty all the evidence which it possessed and did not "conceal" anything. We disagree.

LcL's averment that its final responses were *"greatly* more detailed" than its original responses is specious. By listing as knowledgeable witnesses 65 employees, *none* of whom were associated with LcL, and by specifying as supporting documents the entire compendium of Liberty's workers' compensation files, LcL's responses were worthless.

In any event, the trial court did not abuse its discretion in concluding that LcL was being "evasive" when it tendered discovery responses that submitted no meaningful information and claimed throughout that information will be "developed" by "future discovery," especially where the case had been active

for 16 months, LcL repeatedly ignored meet and confer letters, continued to parrot the same answers after two orders compelling it to give further responses, and propounded no discovery of its own until faced with a motion for terminating sanctions.

LcL's assertion that it did not have any information to support its claims because none of the relevant documents was in its possession is insincere, if not downright deceptive. The trial court's July 13, 2005 order noted that the claim files from which LcL "can obtain the necessary information" were produced on May 16 and 17, 2005.[5] Nevertheless, LcL's further responses continued to state the "belief" that the policies were improperly administered, claimed that the witnesses and documents were "known to Liberty" and "subject to being developed in discovery" and objected that responding would require it to make a "compilation or summary of information," which summary does not exist because Liberty had "delayed and failed to produce requested documents."

In its order striking the cross-complaint, the trial court made the unchallenged finding that while LcL "blame[s] its lack of information on Liberty[,] . . . *Liberty [produced] numerous documents [and] LcL [did] not review[] them,*" and that LcL's opposition failed to identify any formal request for documents that it propounded to Liberty. (Italics added.)

LcL's conduct reeked of bad faith. The trial court could conclude that LcL knew that it had no information or documents to support its serious claims of misfeasance, but continued to engage in obfuscation and game playing. This course of behavior can properly be characterized as "willful."

LcL's postulate that "evasiveness" can only take place where there is intentional concealment of evidence, finds no support in case law. In *Collisson & Kaplan v. Hartunian* (1994) 21 Cal.App.4th 1611 [26 Cal.Rptr.2d 786] (*Collisson*), the defendants responded to the plaintiff's contention interrogatories with stock answers that it was " 'compiling the information requested' " and would provide more data when the compilation was finished. (*Id.* at p. 1614.) The plaintiff objected to the evasive response and also propounded other discovery requests, which defendants either ignored or objected to. The

---

[5] The literal language of the order says, "the claim files from which *plaintiff* can obtain the necessary information were only produced [to] *Liberty Mutual* on May 16 and 17, 2005." We believe the trial court got the parties mixed up. The only reasonable reading of this sentence in light of the context of the order is that claim files were produced *by* Liberty *to* LcL on May 16 and 17.

trial court granted the plaintiff's motion to compel, but when the defendants "continued with their gamesmanship," the court granted a motion to strike the answer. (*Id.* at p. 1615.)

The *Collisson* court rejected the argument that striking the answer was too drastic a sanction because the defendants had only made their "first effort" at drafting responses. (*Collisson, supra,* 21 Cal.App.4th at p. 1618.) "The point that defendants fail to acknowledge is that, while this may have been their first effort to respond, it was not plaintiff's first effort at receiving straightforward responses. Defendants chose to ignore the many attempts, both formal and informal, made by plaintiff to secure fair responses from them. Accordingly, we find no abuse of discretion by the trial court." (*Ibid.*) *Collisson* did not involve "concealment," but rather a pure case of stonewalling. LcL's behavior here was at least as egregious.

Finally, LcL overlooks the fact that the trial court's rulings were not based strictly on evasive responses. In both orders, the trial court noted that LcL repeatedly ignored Liberty's meet and confer letters. LcL twice promised to provide third supplemental responses supporting the defenses in its answer, but failed to do so. Liberty's last meet and confer letter before filing the motion to strike the cross-complaint was also ignored. These are independent abuses of discovery, for which sanctions are statutorily authorized. (§ 2023.010, subd. (i).)

### III.  Prejudice

LcL also argues the orders imposing terminating sanctions constituted an abuse of discretion because its discovery violations "did not prejudice [Liberty's] ability to go to trial." The claim lacks merit.

First, LcL provides no authority stating that terminating sanctions may not be issued unless the court finds that the sanctioned party prejudiced an opponent's ability to go to trial. *Morgan v. Ransom* (1979) 95 Cal.App.3d 664, 670 [157 Cal.Rptr. 212], the lone case cited by LcL on this point, does not so state, and is unpersuasive authority because it was decided before the Civil Discovery Act of 1986, which substantially overhauled the discovery statutes. (Former § 2016 et seq., 1986 Stats., ch. 1334, § 2, p. 4700 [now § 2016.010 et seq.]; see *Irvington-Moore, Inc. v. Superior Court* (1993) 14 Cal.App.4th 733, 741 [18 Cal.Rptr.2d 49].)

■ Regardless, a finding of prejudice to Liberty is not difficult to discern. " 'An important aspect of legitimate discovery from a defendant's point of view is the ascertainment, in advance of trial, of the specific components of plaintiff's case so that appropriate preparations can be made to meet them.' " (*Juarez v. Boy Scouts of America, Inc.* (2000) 81 Cal.App.4th 377, 389 [97 Cal.Rptr.2d 12], quoting *Karz v. Karl* (1982) 137 Cal.App.3d 637, 650 [187 Cal.Rptr. 183].) A party cannot intelligently defend itself against affirmative defenses or damage claims when the other side's discovery responses consist of legal doubletalk and provide no useful information. Here, after numerous extensions of time and more than a year's worth of delay, LcL could still not provide an intelligible factual basis for their defenses and counterclaims.[6] Prejudice is inherent in such tactics.

## IV.   Excessiveness of Terminating Sanctions

### A.   *Punitive Motive*

LcL also claims that terminating sanctions were excessive and an abuse of discretion because the orders were designed solely to punish LcL and not to further the objects of discovery.

The trial court was not being punitive—it was exercising its broad authority to levy the ultimate sanction when prior efforts yielded no results. The question before us " 'is not whether the trial court should have imposed a lesser sanction; rather, the question is whether the trial court abused its discretion by imposing the sanction it chose.' " (*Collisson, supra,* 21 Cal.App.4th at p. 1620, quoting *Do It Urself Moving & Storage, Inc. v. Brown, Leifer, Slatkin & Berns* (1992) 7 Cal.App.4th 27, 36–37 [9 Cal.Rptr.2d 396]; accord, *Laguna Auto Body v. Farmers Ins. Exchange* (1991) 231 Cal.App.3d

---

[6] LcL claims the declarations of Good and Drake show that it indeed possessed evidence supporting its claims. We are unimpressed. Both declarations were filed only *after* LcL, having flouted the court's discovery orders and disregarded Liberty's meet and confer letters, was trying to rescue itself from terminating sanctions. Accordingly, LcL's submission of these declarations was tantamount to closing the barn door after the horse had not only gotten out, but had also left the pasture.

Good's declaration contradicted her deposition testimony as LcL's "Person Most Knowledgeable" that she had no information supporting LcL's claims. The trial court sustained Liberty's objection to her declaration and LcL fails to assign that ruling as error. Drake's declaration, which failed to identify any claim file that Liberty mishandled, failed to specify an amount of damage LcL suffered, and contained only disapproving observations about Liberty's claims practices in general, was properly rejected by the trial judge as setting forth "only opinions and conclusions without sufficient supporting facts."

481, 491 [282 Cal.Rptr. 530] (*Laguna Auto Body*), disapproved on a different ground in *Garcia v. McCutchen* (1997) 16 Cal.4th 469, 478, fn. 4 [66 Cal.Rptr.2d 319, 940 P.2d 906].) Here, LcL persisted in its pattern of failure or refusal to give meaningful responses to discovery. The trial court was not required to allow LcL to continue its stalling tactics indefinitely. (*Mileikowsky v. Tenet Healthsystem* (2005) 128 Cal.App.4th 262, 280 [26 Cal.Rptr.3d 831] (*Mileikowsky*).) No abuse of discretion is shown.

## B.   Past History

■   LcL finally claims that the trial court improperly considered past conduct that had previously been sanctioned. According to this argument, the only issue before the trial court was the severity of LcL's *current* transgressions; past discovery abuses have no place in deciding whether to impose terminating sanctions. The claim has no merit.

Again, the supporting authority cited by LcL, *Motown Record Corp. v. Superior Court* (1984) 155 Cal.App.3d 482 [202 Cal.Rptr. 227], was decided prior to the Civil Discovery Act of 1986, and is not relevant here. Post-1986 cases affirm that the sanctioned party's history as a repeat offender is not only relevant, but also significant, in deciding whether to impose terminating sanctions. (*Mileikowsky, supra,* 128 Cal.App.4th at pp. 279–280 ["But where a violation is willful, *preceded by a history of abuse,* and the evidence shows that less severe sanctions would not produce compliance with the discovery rules, the trial court is justified in imposing the ultimate sanction." (Italics added.)]; *Collisson, supra,* 21 Cal.App.4th at p. 1618 ["Defendants chose to ignore the *many attempts,* both formal and informal, made by plaintiff *to secure fair responses* from them." (Italics added.)]; *Laguna Auto Body, supra,* 231 Cal.App.3d at p. 490 ["We reiterate, however, in this case it was *continued wilful violations* of the discovery statutes embodied in the Code of Civil Procedure which prompted the court's order dismissing the action." (Italics added.)].)

■   Given LcL's months-long lack of cooperation in providing straightforward information, witnesses, and documents to support its claims of malfeasance, the trial court could reasonably conclude that the ultimate sanction was appropriate.

## DISPOSITION

The judgments are affirmed. Respondent Liberty shall recover costs on appeal. (Cal. Rules of Court, rule 8.278(a)(2).)

Hull, Acting P. J., and Cantil Sakauye, J., concurred.