Filed 2/23/15  Oatey v. Caballero CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| DIANE OATEY, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> STEPHANIE M. CABALLERO etc., <br><br> Defendant and Respondent. | D065109 <br><br><br> (Super. Ct. No. 37-2012-00052930-CU-PN-NC) |


APPEAL from a judgment of the Superior Court of San Diego County, Jacqueline M. Stern, Judge.  Affirmed.


Diane Oatey, in pro. per., for Plaintiff and Appellant.

Schonfeld & Bertsche and Alan H. Schonfeld for Defendant and Respondent.

Diane Oatey (Plaintiff) appeals from a judgment of the superior court in favor of Stephanie M. Caballero, individually and doing business as The Law Office Stephanie M. Caballero (Defendant), dismissing the action and awarding Defendant $8,220 in sanctions and $645 in costs.  We affirm the judgment.

I.

BACKGROUND FACTS AND PROCEDURE

In April 2012, Plaintiff filed a complaint against Defendant, asserting one cause of action for professional negligence. Plaintiff alleged that she retained Defendant, an attorney, to provide professional services related to a surrogacy contract and the procurement of a proper surrogate, but failed to use reasonable skill and care in providing these services, causing Plaintiff damages in excess of $2.5 million.

A.   *Defendant's First Round of Discovery and the April 2013 Order Compelling Responses*

In October 2012 Defendant served the following discovery requests on Plaintiff: form interrogatories (set one), special interrogatories (set one) and request for production of documents (set one). Having received no responses to the discovery requests (or to the three meet and confer letters and one telephone call to Plaintiff's attorney), in December 2012 Defendant filed a motion to compel Plaintiff to respond without objections to these discovery requests and for attorney fees and costs.

Plaintiff did not oppose the motion, and in April 2013 the court granted it, ordering that Plaintiff provide verified responses without objections and responsive documents within 10 days and pay sanctions of $960 (April 2013 Order). As we discuss in greater detail *post*, after at least three meet and confer letters, Plaintiff never provided the discovery requests or paid the sanctions required in the April 2013 Order.

2

B.      *Plaintiff's Counsel Withdraws*

By motion filed in May 20, 2013, the attorney then representing Plaintiff, Timothy P. Peabody, requested an order relieving him as counsel.  In support of his motion, Peabody testified that there had been a breakdown in the attorney-client relationship; there were issues of outstanding discovery, and despite his "admonitions" to Plaintiff, the discovery issues had not been resolved; Plaintiff had expressed to him "concerns" about the legal fees; Plaintiff had failed to find new counsel or to agree to represent herself; and his continued representation of Plaintiff would result in a conflict of interest.  Plaintiff opposed the motion, responding (with argument and unauthenticated exhibits, but no evidence) to Peabody's testimony and emphasizing the prejudice she would suffer if Peabody was relieved as counsel.  In particular, Plaintiff argued that she would be prejudiced if she were left without an attorney in June 2013 given the court's April 2013 Order to provide discovery, Defendant's pending motion for summary judgment in November 2013 and the existing trial date in December 2013.

Following a hearing at which Plaintiff participated, the court granted Peabody's motion, getting a commitment from Plaintiff and Peabody that they would meet on July 10, 2013, in order to effect the transition of the files.[1]  A minute order was filed the day of the hearing on June 28, 2013, and a signed order was filed July 30, 2013 (Peabody Order).  As expressly required by the court's orders (and Cal. Rules of Court,

---

[1]      From what we can tell this meeting did not take place, despite the court's best efforts and the agreements on the record

3

rule 3.1362(e)), Peabody served Plaintiff with a copy of the Peabody Order on August 5, 2013.

After the hearing on Peabody's motion, but before entry of the signed order, on July 1 and 15, 2013, Defendant sent Plaintiff (through Peabody, who was still her attorney of record) two meet and confer letters in an effort to obtain Plaintiff's compliance with the April 2013 Order — performance of which had been ordered by April 22, 2013. Defendant specifically asked Peabody to forward the letters to Plaintiff. In response to the second letter, on July 15, 2013, Peabody replied that he would not be responding to discovery.

C.      *Defendant's Attempts at Further Discovery*

Meanwhile, on May 22, 2013, Defendant served Plaintiff (through Peabody who was still counsel of record) with a second set of discovery: request for admissions (set one), form interrogatories (set two), request for production of documents (set two) and special interrogatories (set two). After the date for timely responses and not having received anything, Defendant wrote a total of three meet and confer letters: two to Peabody while he was representing Plaintiff and one to Plaintiff after the court granted Peabody's motion to withdraw.

The day after serving these discovery requests (while Peabody was still counsel of record), Defendant caused to be served on Plaintiff's psychiatrist a subpoena for Plaintiff's psychiatric records. As Defendant explained, Plaintiff had alleged " 'severe emotional distress,' " yet she had not responded to any discovery and trial was a little

4

more than six months away. The psychiatrist declined to produce Plaintiff's records based on Plaintiff's instruction to him that she did not authorize the release of her records.

On July 15, 2013, Defendant served a notice requiring Plaintiff to appear for her deposition and to produce documents on July 30, 2013. (Both of these dates are *after* the court had granted Peabody's motion to withdraw, *before* the Peabody Order had been filed or served, and *after* Peabody told Defendant he would not be responding to discovery.) At some point in time prior to July 26, during Defendant's efforts to secure Plaintiff's attendance at the deposition, when Peabody told Defendant he would not be appearing, Defendant asked Peabody whether he had forwarded the notice to Plaintiff. Having received no answer from Peabody, Defendant wrote Peabody on July 26, again asking whether there would be an appearance on July 30. Defendant heard nothing, and indeed neither Peabody nor Plaintiff appeared at the deposition and no documents were produced.

D.     *Defendant's Sanctions Motion*

On August 8, 2013 — the same day Defendant received a conformed copy of the court's order authorizing Peabody's withdrawal as Plaintiff's counsel — Defendant wrote directly to Plaintiff,[2] setting forth her various defaults in an attempt to meet and confer in

_____

2      Until that date, because Peabody was Plaintiff's counsel of record, Defendant's counsel was precluded from communicating "directly or indirectly" with Plaintiff about the litigation. (Rules Prof. Conduct, rule 2-100 (rule 2-100).)

5

order to resolve the defaults and prepare the case for trial.[3]  Defendant also advised

Plaintiff that, unless she complied with the court's April 2013 Order and the later

discovery requests — each of which was set forth in detail in the letter and its enclosures

— within a week, Defendant would file a motion requesting terminating, issue,

evidentiary and monetary sanctions.

In fact, Defendant took no immediate action, but when Plaintiff had failed to

respond in any manner almost one month later, Defendant filed a motion for terminating,

issue, evidentiary and monetary sanctions (sanctions motion).  The bases of that portion

of the motion seeking terminating sanctions included Plaintiff's failure to have complied

with the April 2013 Order, Plaintiff's refusal to participate in discovery and Plaintiff's

interference with Defendant's attempt to conduct third-party discovery.  In support of the

motion, Defendant submitted a memorandum of points and authorities, a detailed 18-page

declaration from counsel with personal knowledge, a separate statement (in support of the

request for issue and evidentiary sanctions), a request for judicial notice and a notice of

lodgment with 33 exhibits.

Defendant served Plaintiff with the sanctions motion on September 3, 2013, giving

more than five weeks' notice that the motion would be heard on October 11, 2013.

During this five-week time period, Plaintiff prepared at least the following pleadings with

---

[3]     Defendant's letter is four pages and advises Plaintiff of six independent defaults —
including noncompliance with the court's April 2013 Order and failure to respond to
various discovery requests served *after* the April 2013 Order.  As a courtesy, Defendant
included with the letter another 63 pages containing copies of the outstanding discovery
and a pending discovery motion that required Plaintiff's immediate attention.

supporting documents: (1) a 14-page ex parte application for an order correcting the minute order that preceded the April 2013 Order; (2) a related notice of entry of an order denying the ex parte application; (3) a 553-page first amended complaint;[4] (4) a related nine-page motion for leave to file a first amended complaint; (5) a related 26-page ex parte application for an order shortening time for the filing and service of the motion for leave to file a first amended complaint;[5] (6) a 2,969-page motion to continue the trial date from December 6, 2013, until March 31, 2014; and (7) a four-page notice of confirmation of court call appearance.

Meanwhile, Plaintiff failed to prepare and file a timely opposition to the sanctions motion to be heard on October 11, 2013. Instead, on October 8, 2013, Plaintiff filed an ex parte application (to be heard the following afternoon, October 9, 2013, less than two days before the hearing) seeking, in part, an order allowing her to file and serve an opposition to the sanctions motion.[6] The court denied Plaintiff's request on the basis she had presented "no excuse/reason to shorten time two days prior to the hearing."[7]

---

[4]    The original complaint contained 25 numbered paragraphs; asserted one cause of action against one named defendant; and had 59 pages, including exhibits. The proposed first amended complaint contained 104 numbered paragraphs; asserted six causes of action against seven named defendants; and had 553 pages, with exhibits.

[5]    The court granted this application, thereby allowing Plaintiff's motion to be heard on the same date as Defendant's sanctions motion.

[6]    In addition, in her ex parte application, Plaintiff also requested orders of the court to shorten time for her to file (1) "moving papers" for an unidentified motion, (2) a reply to Defendant's opposition to her motion for leave to file a first amended complaint and

7

The court issued a tentative ruling granting the sanctions motion, and at the assigned time on October 11, 2013, the court entertained oral argument — including hearing at length from Plaintiff, even though she had failed to file a timely opposition. The court ruled as follows:

> "The court will not consider Plaintiff's late opposition declaration filed on Oct. 9, 2013.
>
> "Plaintiff appeared ex parte on Oct. 9, 2013 seeking leave to file and have the Court consider her late opposition to [the sanctions motion]. That ex parte application was denied as *the Court found no good cause in the ex parte papers for the requested relief.*
>
> "Plaintiff filed her opposition declaration on Oct. 9, 2013 following the ex parte hearing. *The Court will not consider the declaration in ruling on this motion as it was not timely filed.* In fact, it was filed so late that Defendant[ has] no opportunity to file and serve a timely reply to that opposition declaration as reply was due Oct. 4, 2013.
>
> "The Defendant['s] unopposed Request for Judicial Notice is granted.
>
> "*Defendant['s] unopposed [sanctions motion] is granted pursuant to C[ode of ]C[ivil ]P[rocedure section] 2023.030[, subdivision ](d).* The Court dismisses Plaintiff's complaint . . . .
>
> "The prerequisites for imposition of terminating sanctions are that there was a failure to comply with a discovery order and the failure was willful. (*Liberty Mutual Fire Ins. Co. v. LcL Administrators, Inc.* (2008) 163 Cal.App.4th 1093, 1102.) *The record before the Court is sufficient to demonstrate both factors.*

(3) a reply to Defendant's opposition to her motion to continue the trial date for three and a half months.

7    Despite the court's ruling, the record on appeal does contain 366 pages of what Plaintiff contends is her opposition to the sanctions motion — i.e., a declaration with attached exhibits A through Q. The first page of the declaration has three stamps from the clerk's office: "RECEIVED" October 9, 2013, at 10:11 a.m.; "FILED" October 9, 2013, at 10:19 a.m.; and "FILED ON DEMAND."

"On April 12, 2013, this Court granted Defendant['s] unopposed Motion to Compel Responses to the first set of Form and Special Interrogatories and Requests for Production of Documents[,] ordering Plaintiff to serve <u>verified</u> responses <u>without objections</u> to Defendant['s] discovery requests within ten days of the hearing.  Defendant[s] lodged exhibit B shows that Notice of Entry of the [April 2013 O]rder granting that motion was served on Plaintiff's prior attorney [Peabody] on April 16, 2013.  The record also shows that Plaintiff herself had notice of that order.  [Citation.]  However, according to moving counsel's supporting declaration, Plaintiff failed to comply with the [April 2013 O]rder.  Thus, there is ample evidence in the record showing a failure to obey this Court's order and that failure was willful.

"The Court can also consider, in ruling on this motion, evidence showing Plaintiff has engaged in continual and additional violations of the discovery statutes.  (See *Liberty Mutual*[ *Fire Ins. Co. v. LcL Administrators, Inc.*], *supra*, [163 Cal.App.4th 1093,] 1106[.])  According to Moving counsel's declaration, in addition to failing to obey this Court's April [2013 O]rder, Plaintiff has not responded to [four sets of discovery requests], all of which were served on Plaintiff on May 22, 2013.  [Citation.]  In addition, Plaintiff failed to appear at her properly noticed July 30, 2013 deposition and failed to respond to Defen[dant's] counsel's request to her to provide alternative deposition dates.  [Citation.]

"In addition to the above terminating sanction, the Court orders Plaintiff to pay additional monetary sanctions in the amount of $7,260.00 within 45 days of this hearing date. . . ."  (Italics added.)

A week later, the court entered a judgment of dismissal, repeating the prior awards of monetary sanctions and awarding costs.

Plaintiff timely appealed.

9

II.

DISCUSSION

Plaintiff presents three arguments on appeal: (1) the judgment should be set aside pursuant to Code of Civil Procedure section 473, subdivision (b) (section 473(b));[8] (2) the court abused its discretion in granting the sanctions motion; and (3) the court abused its discretion in waiting 33 days to sign the order granting Peabody's motion to withdraw as counsel. None is persuasive.[9]

A.      *Section 473(b) Relief Is Not Available in the Court of Appeal in the First Instance*

Relying on section 473(b),[10] Plaintiff asks us to "rescind[]" the judgment and "reinstate[]" the case against Defendant. (Capitalization omitted.) The problem with Plaintiff's argument is that the procedure and remedy in section 473(b) are available only in superior court.

Section 473 (which deals with "relief from judgment" at § 473, subd. (b)) is found at part 2 (which deals with "civil actions") of title 6 (which deals with "pleadings in civil

---

[8]      All further unidentified statutory references are to the Code of Civil Procedure.

[9]      Plaintiff's failure to have filed an opposition to the sanctions motion is a technical forfeiture of her right to argue on appeal that the trial court erred in granting the motion. (*Bell v. American Title Ins. Co.* (1991) 226 Cal.App.3d 1589, 1602.) However, given the significance of terminating sanctions and the trial court's rulings on the merits of the sanctions motion, we exercise our discretion to reach the merits of Plaintiff's appeal.

[10]      The pertinent language of section 473(b) provides: "The court may, upon any terms as may be just, relieve a party or his or her legal representative from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect."

actions") of the Code of Civil Procedure.  In this regard, "[a] civil action is prosecuted by one party against another for the declaration, enforcement or protection of a right, or the redress or prevention of a wrong."  (§ 30.)  Also within part 2 (which deals with civil actions) is title 13 (which deals with "appeals") and provides at section 901 that "[a] judgment or order in a civil action . . . may be reviewed as prescribed in this title [13] . . . ."  Accordingly, *in a civil action*, a party may seek relief from judgment under section 473 and a party may take an appeal under title 13; but we are unaware of any authority entitling a party to seek section 473 relief *in an appeal*.  This understanding is reinforced by our Supreme Court, which tells us that relief under section 473 " 'is addressed to the sound discretion *of the trial court*.' "  (*Carroll v. Abbott Laboratories, Inc.* (1982) 32 Cal.3d 892, 897, italics added (*Carroll*).)

Here, however, because Plaintiff never asked the trial court to exercise its discretion under section 473 in the first instance, there is no exercise of discretion for us to review on appeal.

B.     *Plaintiff Has Not Met Her Burden of Establishing an Abuse of Discretion in Granting the Sanctions Motion*

Plaintiff argues that the trial court erred in awarding both terminating sanctions and monetary sanctions.  We disagree.

We review for an abuse of discretion a trial court's decision to issue either terminating or monetary sanctions (*Liberty Mutual Fire Ins. Co. v. LcL Administrators, Inc.*, *supra*, 163 Cal.App.4th 1093, 1102 (*Liberty Mutual*)); and Plaintiff and Defendant agree as to our application of this standard.  The appellant has the burden of establishing

11

an abuse of discretion, keeping in mind that the trial court's judgment is " '*presumed correct.*' "  (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 566, 564 (*Denham*).)

An appellant does not meet her burden by arguing merely that a different ruling would have been better or more equitable.  Rather, a trial court abuses its discretion only if, based on the applicable law and considering all of the relevant circumstances, the decision " 'exceeds the bounds of reason.' "  (*Denham*, *supra*, 2 Cal.3d at p. 566.)  As particularly applicable here, given the evidence before the trial court, we must affirm so long as the record contains "sufficient evidence for us to conclude that the action of the trial court was within the permissible range of options set by the legal criteria."  (*Dorman v. DWLC Corp.* (1995) 35 Cal.App.4th 1808, 1815; see *Quantum Cooking Concepts, Inc. v. LV Associates, Inc.* (2011) 197 Cal.App.4th 927, 932 [no abuse of discretion where the ruling " ' "falls within the permissible range of options set by the legal criteria" ' "].)

In determining the sufficiency of the evidence, as an appellate court we "may not weigh the evidence or consider the credibility of witnesses.  Instead, the evidence most favorable to [the respondent] must be accepted as true and conflicting evidence must be disregarded[,] . . . 'indulging every legitimate inference which may be drawn from the evidence in [the respondent's] favor . . . .' "  (*Campbell v. General Motors Corp.* (1982) 32 Cal.3d 112, 118.)  The testimony of a single witness may be sufficient (*In re Marriage of Mix* (1975) 14 Cal.3d 604, 614; Evid. Code, § 411); whereas even uncontradicted evidence in favor of an appellant does not establish the fact for which the evidence was submitted (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 890).  The issue is not whether there is evidence in the record to support a different finding, but whether there is

12

evidence that, if believed, would support the trier of fact's finding. (*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 872-873 (*Bowers*).)

1. *Terminating Sanctions*

" ' " 'Only two facts are absolutely prerequisite to imposition of the [terminating] sanction: (1) there must be a failure to comply [with a discovery order] . . . and (2) the failure must be wil[l]ful.' " ' " (*Liberty Mutual*, *supra*, 163 Cal.App.4th at p. 1102.) The record here contains substantial evidence of both of these facts — as well as others that support the dismissal of the action.

a. *Plaintiff Failed to Comply with the April 2013 Order*

The April 2013 Order required Plaintiff to provide to Defendant — no later than April 22, 2013 — verified responses without objections to form interrogatories, special interrogatories and requests for production of documents; responsive documents; and $960 in sanctions. Defendant's counsel testified that as of August 31, 2013, "there has been no compliance whatsoever by Plaintiff with the Court's April [] 2013 Order." Consistently, the record contains letters dated July 15 and July 30, 2013, indicating Plaintiff had not complied with the April 2013 Order; and on July 15, 2013, Peabody (the attorney then representing Plaintiff) advised Defendant in writing, "I will not be responding to discovery."[11]

_____

[11] At the time Peabody wrote this statement, the court had granted his motion to withdraw — subject to obtaining and serving Plaintiff with a written order — but not yet filed the Peabody order. Much of Plaintiff's brief is directed to blaming Peabody for failing to comply with the April 2013 Order or to blaming Defendant for communicating with Peabody rather with her directly prior to entry and service of the Peabody Order in August 2013. As noted *ante*, however, Defendant's counsel was precluded from

13

In her brief, Plaintiff contends that she complied with the April 2013 Order by "personally serv[ing] on [Defendant] and fil[ing] with the clerk . . . 2559 pages of signed, verified, and numbered discovery responses, without objections dated April 21, 2013." The record on appeal does not support Plaintiff's contention. First, each of the 16 sets of responses contains four pages of objections.[12] Second, none of the 16 sets of responses contains an attorney's signature; yet the caption of each set of discovery responses contains Peabody's firm and contact information, and each of the signature blocks is set up for Peabody's signature, but is blank.[13] Third, the record reference provided by Plaintiff indicates that these responses were served on *September 23, 2013*, as exhibits in support of Plaintiff's motion to continue the trial, not as discovery responses.[14] Fourth, although not cited by Plaintiff, the record does contain a proof of service for the

---

communicating "directly or indirectly" with Plaintiff until *after* the court filed the Peabody Order in August 2013 (rule 2-100); and Defendant is not responsible for (and should not suffer as a result of) whatever difficulties existed between Plaintiff and Peabody. In any event, the April 2013 Order required compliance *no later than April 22, 2013*; yet Peabody did not file his motion to withdraw until *four weeks after required compliance* on May 20, 2013, and the court did not orally grant Peabody's motion until *nine weeks after required compliance* on June 28, 2013.

[12] Plaintiff does not explain how or why she had 16 sets of responses, given that Defendant had not sent out 16 sets of requests.

[13] Each of the 16 sets of responses contains *Plaintiff's* verification with a typed date of "April 21, 2013." A reasonable inference is that these 16 sets were drafts prepared by Peabody and forwarded to Plaintiff, who never returned them to Peabody.

[14] This may explain why Plaintiff argues on appeal that she "served on [Defendant] *and filed with the clerk*" the 2,559 pages of discovery responses. (Italics added.) Had Plaintiff timely responded, the responses would not have been filed, only served.

14

discovery responses *dated April 22, 2013* (filed October 1, 2013), but it contains enough inconsistencies for the trial court to have fully discredited Plaintiff's contention that this proof of service reflects compliance with the April 2013 Order: the caption page contains Plaintiff's contact information, yet on April 22, 2013, Peabody was representing Plaintiff; the person who signed the proof of service is the person who signed at least 19 of Plaintiff's proofs of service in the record only after Plaintiff began representing herself; and service was effected only on Peabody, Peabody's legal assistant and Plaintiff herself, *with no mention of Defendant.* Finally, on April 24, 2013, Plaintiff was still asking Peabody when the discovery responses were due, and on May 1, 2013, Plaintiff was still forwarding Peabody draft responses to the outstanding discovery requests.

At oral argument, Plaintiff changed her focus, suggesting that because Peabody had complied with the original discovery requests by serving signed responses on *January 11, 2013*, either she always had been in compliance with the April 2013 Order or the April 2013 Order was issued in error. Indeed, the record does contain three sets of discovery responses that appear to be signed by Peabody with proofs of service dated January 11, 2013. However, they do not comply with the April 2013 Order, which required Plaintiff to have served "[v]erified responses without objections" no later than April 22, 2013. Here, the January 11, 2013 responses both are *unverified* and contain *pages of objections.*[15] Additionally, in her opposition to Peabody's motion to withdraw

---

[15] Even without the requirements of the April 2013 Order, Plaintiff's January 11, 2013 responses were improper, because "[u]nsworn responses are tantamount to no responses at all." (*Appleton v. Superior Court* (1988) 206 Cal.App.3d 632, 636.)

15

as Plaintiff's counsel (filed in June 2013), Plaintiff submitted evidence indicating that, on January 21, 2013, (10 days *after* Peabody served the unverified responses), Plaintiff believed that that the responses provided by Peabody were not "done correctly." The January 11, 2013 responses did not comply with the requirements of the April 2013 Order.

In closing, we note that none of the 16 sets of unsigned verified responses dated April 2013 (relied on by Plaintiff in her brief) is consistent with any of the three sets of signed unverified responses dated January 2013 (relied on by Plaintiff at oral argument).

For these reasons, substantial evidence supports the court's finding that Plaintiff failed to comply with the April 2013 Order.

      b.    *Plaintiff's Failure to Comply with the April 2013 Order Was Willful*

Although Plaintiff does not directly argue that the failure to comply with the April 2013 Order was not willful, she implies a lack of willfulness by placing the blame on Peabody, Defendant's counsel and even the court (see pt. II.C., *post*) for the lack of discovery responses. In determining willfulness in the context of failing to comply with discovery, *Deyo v. Kilbourne* (1978) 84 Cal.App.3d 771 teaches:

> "Lack of diligence may be deemed willful in the sense that the party understood his obligation, had the ability to comply, and failed to comply. [Citation.] A willful failure does not necessarily include a wrongful intention to disobey discovery rules. A conscious or intentional failure to act, as distinguished from accidental or involuntary noncompliance, is

---

Defendant timely raised this objection in two unsuccessful meet and confer efforts, which Defendant submitted as evidence of Plaintiff's discovery abuses in support of the sanctions motion.

16

sufficient to invoke a penalty."  (*Id.* at pp. 787-788; see *Sauer v. Superior Court* (1987) 195 Cal.App.3d 213, 227-228 (*Sauer*).)

Here, Peabody (who remained Plaintiff's attorney of record until August 5, 2013) was served with the April 2013 Order on April 16, 2013.  Defendant later sent Peabody two letters, reminding him of the April 2013 Order and its past due deadline — to which Peabody replied, "I will not be responding to discovery" — all at a time when he was still Plaintiff's attorney of record.  Notably, even if we credit Plaintiff's contention that Peabody's performance of his professional duties fell below the standard of care,[16] because Plaintiff was not " 'effectually and unknowingly deprived of representation,' " Peabody's actions are " ' "imputed to [Plaintiff] and may not be offered by the latter as a basis for relief" ' " in failing to respond to discovery.  (*Sauer*, *supra*, 195 Cal.App.3d at p. 231; see *Carroll*, *supra*, 32 Cal.3d at p. 898 [negligence of attorney is imputed to client].)

Moreover, at all times, Plaintiff herself knew of the April 2013 Order and its requirements, including that it required obedience in late April.  During the time period April 22-24, 2013, when Peabody was still representing Plaintiff (a full month before he filed his motion to withdraw), Plaintiff wrote Peabody, stating in different e-mails:  "I am very concerned since the judge made an order to produce discovery by tomorrow . . ."; "Please communicate with me since there is a deadline for this discovery . . ."; "Can you tell me when the discovery is due?  Is there an additional 5 days for the mailing?"; and

_____

16    The trial court made no such finding, and we express no opinion.  We assume this fact solely for the purpose of this argument.

17

"When is the discovery due? Are you planning on getting it in on time?" Then, in her June 2013 opposition to Peabody's motion to withdraw, Plaintiff affirmatively acknowledged both the April 2013 Order and her noncompliance with it.[17] Finally — and most persuasively — once when Plaintiff was of record as representing herself, in August 2013 Defendant delivered to Plaintiff a meet and confer letter regarding her noncompliance with the April 2013 Order, including a copy of the April 2013 Order and the related discovery requests.[18] Plaintiff never responded to Defendant's August 2013 letter.

For these reasons, substantial evidence supports the court's finding that Plaintiff's failure to comply with the April 2013 Order was willful.

c. *The Terminating Sanction Was Not an Abuse of Discretion*

Plaintiff argues that the dismissal of action as a sanction for discovery abuses is excessive and punitive. As the *Liberty Mutual* opinion describes our task, "[t]he question before us ' "is not whether the trial court should have imposed a lesser sanction; rather, the question is whether the trial court abused its discretion by imposing the sanction it chose." ' " (*Liberty Mutual*, *supra*, 163 Cal.App.4th at p. 1105.) Given the record here, Plaintiff has not established an abuse of discretion.

---

[17] Indeed, Plaintiff included a copy of the April 2013 Order as an exhibit to her June 2013 opposition.

[18] In this August 2013 letter, Defendant also asked Plaintiff to comply with other outstanding discovery requests from May and July 2013, providing additional copies of the requests and advising Plaintiff that if she did not respond within a week Defendant would bring a motion for terminating, issue, evidentiary and monetary sanctions.

We are further guided by the understanding that "where a violation is willful, preceded by a history of abuse, and the evidence shows that less severe sanctions would not produce compliance with the discovery rules, the trial court is justified in imposing the ultimate sanction." (*Mileikowsky v. Tenet Healthsystem* (2005) 128 Cal.App.4th 262, 279-280 (*Mileikowsky*).) Here, there was a history of abuse that resulted in the April 2013 Order. (Pt. I.A., *ante*.) The violation of the April 2013 Order was willful. (Pt. II.B.1.b., *ante*.) Finally, Plaintiff persisted in her pattern of failing to timely and meaningfully participate in discovery even *after* the April 2013 Order: Plaintiff failed to respond to a second round of written discovery;[19] Plaintiff failed to attend her properly noticed deposition;[20] and Plaintiff interfered with Defendant's efforts to obtain, and successfully precluded Defendant from obtaining, records from Plaintiff's psychiatrist

---

[19] In May 2013, Defendant served Peabody with requests for admissions (set one) (six requests); form interrogatories (set two) (one interrogatory); special interrogatories (set two) (22 interrogatories); and request for production of documents (set two) (24 requests). Defendant received no responses. In July 2013, Defendant made multiple efforts to meet and confer in writing, but received no discovery responses. Once Plaintiff was representing herself, in August 2013 Defendant again attempted to obtain discovery responses by writing Plaintiff directly, advising her that she was in default, providing her additional copies of the outstanding discovery and advising her that if she did not respond within a week he was going to file a motion for sanctions. Plaintiff did not respond.

[20] As with the other discovery requests after the April 2013 Order, Defendant served the notice of deposition on Peabody at a time when he was counsel of record in May 2013, and Plaintiff did not appear; Defendant made numerous attempts to meet and confer with Peabody (including a letter in July 2013), and Plaintiff still did not appear; when Plaintiff began representing herself, Defendant wrote her a meet and confer letter in August 2013 (including a copy of the original notice and inviting Plaintiff to suggest a convenient date), and Plaintiff never replied.

despite Plaintiff's claim for "severe emotional distress."[21]  The trial court expressly relied on these "continual and additional violations of the discovery statutes" in determining the sanctions to be awarded.

Significantly, Defendant also made a strong showing of prejudice.  Defendant first described the need for the discovery responses, including those that preceded the April 2013 Order.  Defendant then set forth her diligence both in requesting discovery and in following up when deadlines passed with no responses.  Finally, Defendant explained that, as a direct result of Plaintiff's failure to participate in discovery, Defendant had been precluded from bringing a potentially dispositive motion within the existing court-ordered deadlines and Defendant would have to go to trial just three months later not having been provided *any* discovery on a claim for over $2.5 million.

Plaintiff's persistence in failing to provide discovery even after the lesser sanctions awarded in the April 2013 Order (which Plaintiff has ignored) is sufficient justification for the terminating sanctions.  (*Liberty Mutual*, *supra*, 163 Cal.App.4th at p. 1106 ["the sanctioned party's history as a repeat offender is not only relevant, but also significant, in deciding whether to impose terminating sanctions"]; *Mileikowsky*, *supra*, 128 Cal.App.4th at pp. 279-280.)  The trial court was not required to allow Plaintiff to continue indefinitely her disregard for court process in an action she filed.  (*Liberty Mutual*, at p. 1106; *Mileikowsky*, at p. 280.)

---

21    Defendant caused a third party subpoena to be served on Plaintiff's psychiatrist, Plaintiff instructed the psychiatrist not to release her records, Defendant's two meet and confer letters to Peabody went unanswered, and Defendant never received the records.

2.      *Monetary Sanctions*

Plaintiff next contends the court abused its discretion in awarding sanctions of $8,865 — comprised of $960 in sanctions from the hearing that resulted in the April 2013 Order, $7,260 in sanctions from the hearing that resulted in the terminating sanctions and $645 "for attorney's fees."

Initially, we note that the court did not award $645 either for attorney's fees or as sanctions.  Rather, after entry of judgment and following the timely filing of Defendant's memorandum of costs in which Defendant claimed $495 in filing and motion fees[22] and $150 in jury fees, the clerk entered the amount of $645 *in costs* in the blank the court left in the judgment.  In any event, Plaintiff has forfeited the right to challenge the award of costs on appeal by failing to have challenged the memorandum of costs in the trial court. (*Santos v. Civil Service Bd.* (1987) 193 Cal.App.3d 1442, 1447 ["failure to file a motion to tax costs constitutes a waiver of the right to object"]; *Douglas v. Willis* (1994) 27 Cal.App.4th 287, 289.)

With regard to the actual monetary sanctions awarded in the judgment ($960 + $7,260 = $8,220), Plaintiff repeats many of her arguments blaming Peabody, Defendant's counsel and the court (see pt. II.C., *post*) for the noncompliance with the April 2013 Order and the failure to participate in discovery after April 2013.  In so doing, Plaintiff is essentially contending on appeal that the trial court should have credited *her* evidence of

---

22      Defendant requested a filing fee for only one motion, which did not include either the motion to compel discovery responses (that resulted in the April 2013 Order) or the sanctions motion.

excuse and justification rather than *Defendant's* evidence of a willful failure to comply with the April 2013 Order. Plaintiff's contention fails for at least two reasons.

First, Plaintiff's evidence was not before the trial court. The court denied Plaintiff's ex parte application to allow her to file and serve an opposition to the sanctions motion less than two days prior to the hearing, based on five weeks' notice of the motion and no showing of good cause.

Second, given the standard of review, "if the trial court's conclusion was a reasonable exercise of its discretion, we are not free to substitute our discretion for that of the trial court." (*Avant! Corp. v. Superior Court* (2000) 79 Cal.App.4th 876, 881-882.) Because " '[t]he scope of discretion always resides in the particular law being applied[,]' " we consider "whether, given the established evidence," the trial court's ruling "falls within the permissible range of options set by the legal criteria." (*Department of Parks & Recreation v. State Personnel Bd.* (1991) 233 Cal.App.3d 813, 831 (*Department of Parks*).)

Here, Defendant requested the monetary sanctions pursuant to sections 2031.300, subdivision (c); 2031.320, subdivision (c); 2030.290, subdivision (c); 2023.030, subdivisions (a) and (c); 2023.010, subdivisions (d), (g) and (i); and 177.5. In short, section 2023.030, subdivision (a) allows for monetary sanctions against a party who engages in the misuse of the discovery process; section 2023.010 contains a nonexclusive list of misuses of the discovery process, and subdivisions (d), (g) and (i) include, respectively, failing to respond or submit to an authorized method of discovery, disobeying a court order, and failing to meet and confer if required under a specific

22

section that requires such conduct prior to filing a discovery motion; section 2031.300, subdivision (c) mandates the imposition of monetary sanctions against a party who unsuccessfully opposes a motion to compel a response to a demand for inspection of documents; section 2031.320, subdivision (c) allows for monetary sanctions against a party who fails to obey an order compelling the inspection of documents; section 2030.290, subdivision (c) both mandates the imposition of monetary sanctions against a party who unsuccessfully opposes a motion to compel a response to interrogatories and allows a further monetary sanction against a party who fails to obey an order compelling answers; and section 177.5 allows for monetary sanctions not to exceed $1,500 payable to the court for a party's violation of a court order.

Although the trial court did not state under which provision it awarded monetary sanctions, at a minimum the evidence of Plaintiff's failure to comply with the various directives in the April 2013 Order is sufficient to support an award of monetary sanctions under (1) section 2023.030, subdivision (a) (misuse of discovery process, which includes disobeying a court order [§ 2023.010, subd. (g)]); (2) section 2031.320, subdivision (c) (failure to obey an order compelling inspection of documents); and section 2030.290, subdivision (c) (failure to obey an order compelling answers to interrogatories).[23] The fact that Plaintiff may have presented other evidence which if credited would have been a

---

[23]    By this statement, we do not imply either that the court was required to state the statute under which the monetary sanctions were awarded or that the evidence was insufficient to support an award of monetary sanctions under the other legal criteria relied on by Defendant in the sanctions motion.

23

defense to the monetary sanctions is irrelevant to our analysis on appeal.  As we introduced *ante*, the issue is not whether there is evidence to support a different finding, but whether there is evidence that, if believed, would support the finding actually rendered.  (*Bowers*, *supra*, 150 Cal.App.3d at pp. 872-873.)

Finally, although Plaintiff does not directly challenge the amount of the sanctions, we are satisfied that Defendant presented substantial evidence in support of both:  (1) the award of $960 in attorney fees and costs associated with obtaining the April 2013 Order; and (2) the award of $7,260 in attorney fees and costs associated with attempting to obtain Plaintiff's compliance with the April 2013 Order and in preparing and arguing the sanctions motion.

For these reasons, the court did not abuse its discretion in awarding monetary sanctions.

C.   *Plaintiff Has Not Established an Abuse of Discretion Associated with the Filing of the Peabody Order*

At a hearing on June 28, 2013, the court granted Peabody's motion to be relieved as Plaintiff's counsel.  The court signed and filed the Peabody Order (using the mandatory Judicial Council form) on July 30, 2013.  Peabody served Plaintiff with a conformed copy of the Peabody Order on August 5, 2013.  During the time period of June 28 to August 5, 2013, Peabody refused to participate in discovery, and Defendant's counsel declined to speak with Plaintiff the one time she called counsel directly.[24]  At the hearing

---

[24]    We express no opinion on Peabody's refusal to participate in discovery.  To the extent Plaintiff faults Defendant's counsel for not communicating with her, we agree with

on the sanctions motion in October 2013, the court mentioned that its practice is to sign proposed orders within two days of receiving them.

Based on these facts, Plaintiff contends that because Peabody included a proposed order with his motion on May 20, 2013, the court abused its discretion in waiting until July 30, 2013, to sign and file the Peabody Order. As we explained *ante*, an abuse of discretion must be analyzed in the context of the applicable law and the evidence presented (*Department of Parks*, *supra*, 233 Cal.App.3d at p. 831), and Plaintiff has the burden of establishing the alleged abuse (*Denham*, *supra*, 2 Cal.3d at p. 566). Plaintiff has not met her burden here.[25]

First, Plaintiff has not established the legal criteria to be applied in the timing of the filing of written orders relieving counsel, and we are unaware of any such standard.

Moreover, Plaintiff's recitation of the evidence is not substantiated by the record on appeal. Most significantly, the record does not support Plaintiff's premise that the court had a proposed order in May. In fact, Peabody did not lodge a proposed order with his motion. All Peabody did was attach as exhibit C to his declaration a copy of a proposed order — without any mention in his declaration what any of the exhibits were

---

Defendant that rule 2-100 precluded counsel from communicating with Plaintiff until after the court filed the Peabody Order.

[25]   While blaming Peabody, Defendant's counsel and the court for what she characterizes as the delay in the filing of the Peabody Order, Plaintiff presents no reason or explanation for not submitting a proposed order herself.

and without actually presenting a proposed order to the court.[26]  Indeed, the Peabody Order (i.e., the actual order the court signed and filed) contains different information than exhibit C to Peabody's declaration in six of the eight numbered paragraphs that require information — including how to contact Plaintiff.

## DISPOSITION

The judgment is affirmed.  Defendant is awarded costs on appeal.  (Cal. Rules of Court, rule 8.278(a).)


IRION, J.

WE CONCUR:


McCONNELL, P. J.


BENKE, J.

---

[26]  Exhibit A appears to be an unsigned copy of a substitution of attorneys form by which Plaintiff would be representing herself in place of Peabody, and exhibit B appears to be a copy of the register of actions in the superior court case.