Filed 9/2/20  Arax v. Watershed Investments CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| MANE ARAX et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>WATERSHED INVESTMENTS, INC., et al.,<br><br>Defendants and Respondents. | F077056<br><br>(Super. Ct. No. 16CECG03415)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  Jeffrey Y. Hamilton, Jr., Judge.

Law Office of Joseph West and Joseph A. West for Plaintiffs and Appellants.

Wilkins, Drolshagen & Czeshinski, James H. Wilkins and Quentin Cedar for Defendants and Respondents.

-ooOoo-

Mane Arax and Joseph Simka (plaintiffs) appeal from a judgment of dismissal in a civil action.  The judgment was entered in favor of Watershed Investments, Inc., and Gwenlee Cedar (defendants) after the trial court ordered terminating sanctions due to plaintiffs' repeated failure to provide timely and complete discovery responses.  The

issue on appeal is whether the trial court abused its discretion by imposing terminating sanctions. No abuse of discretion has been shown. We therefore affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs claimed to be the owners of a waterfront property (the property) at Millerton Lake in the town of Friant. Defendants are the alleged owners of six parcels of land surrounding the property and/or "the [c]orporation created by those owners for the purpose of management of those [parcels]." Located on defendants' land is a well from which occupants of the property have pumped water for many years; the parties call it the "Domestic Water System."

On October 17, 2016, Watershed Investments, Inc., filed a small claims action against three people: Mane Arax, Mike Simka, and "Joseph Simka Jr."[1] The pleading alleged an outstanding debt of approximately $4,500 for "PG&E bills incurred in connection with [the] use of electricity to pump water [from/through the Domestic Water System]." The parties being sued were further alleged to owe unpaid "community maintenance expenses" and costs to repair a "community entrance gate" they had damaged.

Three days later, on October 20, 2016, plaintiffs filed the complaint in this lawsuit for "[t]respass on easement," declaratory relief, and injunctive relief. Plaintiffs alleged they owned the property and also held an "[o]wnership interest" in the Domestic Water System. The alleged rights and interest in the Domestic Water System are/were allegedly derived from an easement agreement executed in 1990 by the parties' predecessors in

---

[1]It is unclear whether Joseph Simka, Jr., is the same person as plaintiff/appellant Joseph Simka. Some of plaintiffs' discovery responses identify as percipient witnesses both "Joseph Simka Sr." and "Joseph Simka Jr." However, in response to discovery requests asking for the parties' names and all names previously used, plaintiff identified himself as "Joseph Simka." Curiously, it appears that when filing their notice of appeal and subsequent briefing, plaintiffs attempted to unilaterally change the case caption to read "Joseph Simka, Jr." instead of Joseph Simka. We find nothing in the record to indicate such a change was authorized or otherwise appropriate.

interest. Among other contentions, the complaint accused defendants of wrongfully stopping and preventing the flow of water from the Domestic Water System to the property. The controversy was alleged to involve a monetary sum exceeding $250,000.

On October 27, 2016, plaintiffs filed an ex parte application for a temporary restraining order "and order to show cause re preliminary injunction enjoining defendants from … [¶] 1) blocking the flow of water from the Domestic Water System to Plaintiffs['] property; [¶] 2) changing the billing party with PGE into defendants['] name for any utilities delivered to plaintiffs['] property; [¶] [and] 3) from contacting Plaintiffs, plaintiff's friends or plaintiff's contractual partners[.]" The application was supported by a declaration from Arax, wherein she attested to owning the property and also authenticated a copy of the 1990 easement agreement referenced in the complaint.

A general understanding of defendants' arguments in opposition to the request for injunctive relief is important to fully grasping the nature and significance of the parties' subsequent discovery disputes. Defendants argued plaintiffs did not hold title to the property. Furthermore, although Arax had owned the property from approximately 2002 through 2015, documents in the chain of title allegedly showed the 1990 easement agreement was "reserved and excepted" from the original conveyance to her and from all subsequent grant deeds. In other words, neither Arax nor her successors in interest had ever held rights under the easement agreement. Defendants thus argued plaintiffs could not demonstrate a reasonable probability of prevailing at trial. In addition, the trial court was made aware of the related small claims action.

Defendants requested judicial notice of three grant deeds on file with the Fresno County Recorder's Office. Allegedly true and correct copies of the deeds were attached to a sworn declaration by defense counsel. The first deed, recorded in March 2002, showed ownership of the property had been conveyed in late 2001 from Oro Financial of California, Inc., to "Mane Arax, an unmarried woman, dba Mane Arax Co." (Some capitalization omitted.) The deed stated the grantor was "excepting and reserving

3.

therefrom" all rights, title, and interest "in and to that certain agreement entitled "Easement Agreement," dated January 1, 1990 …." (Some capitalization omitted.) The deed also provided "that grantee [Arax], on behalf of itself and its successors and assigns, consents and agrees that it is estopped to ever contend, under any legal or equitable theory of any other claim of right, that it or its successors and assigns have any rights in any of the rights thus reserved …, including any and all rights under the easement." (Some capitalization omitted.)

The second deed, executed and recorded in January 2015, showed Arax had conveyed her interest in the property to "Joseph H Simka, Jr., a single man[,]" as "a bonafide gift" [*sic*]. This deed contained the same language as quoted above with regard to the 1990 easement agreement. The third deed, executed and recorded in January 2016, showed Joseph H. Simka, Jr., had conveyed the property to himself and "Mike Simka" as joint tenants. According to defendants, "when the 2016 Grant Deed was recorded it omitted the entire page from the previous grant deed containing the reservation and exception and release language."

In light of defendants' evidence, the trial court denied plaintiffs' application for preliminary injunctive relief. The court also ruled "that in order to receive water from the 'Domestic Water System'" while the lawsuit was pending, plaintiffs were required to pay defendants "the amount invoiced to them corresponding to the entire amount of the Pacific Gas & Electric billing statement pertaining to the Domestic Water System." In the event of nonpayment, defendants were "authorized to terminate the flow of water from the Domestic Water System to the [property]."

On November 30, 2016, defendants filed an answer to the complaint. On December 5, 2016, defendants served plaintiffs with form interrogatories, special interrogatories, requests for admissions, and requests for production of documents. Pursuant to defense counsel's granting of two extension requests, the deadline for service of plaintiffs' responses was February 15, 2017. Defendants later filed separate motions

4.

regarding each form of written discovery. For the sake of clarity, we summarize the remaining background information under separate headings.

### *Special Interrogatories*

Initially, plaintiffs failed to provide any responses to the special interrogatories. On March 10, 2017, defendants filed a motion to compel plaintiffs to respond. (See Code Civ. Proc., § 2030.290, subd. (b); all further undesignated statutory references are to this code.) Defendants also requested monetary sanctions. (*Id.*, subd. (c).) Plaintiffs did not file a response to the motion.

On May 2, 2017, the trial court granted defendants' motion and imposed monetary sanctions of $1,020. The sanctions related not only to the special interrogatories, but also plaintiffs' conduct vis-à-vis other outstanding discovery requests. Plaintiffs were ordered to serve verified responses to the special interrogatories "within ten days."

Plaintiffs did not comply with the trial court's order. On August 31, 2017, defendants filed a request for a pretrial discovery conference (PDC). The trial court's local rules require such requests to be made prior to filing any discovery motion other than a motion to compel initial responses. (Super. Ct. Fresno County, Local Rules, rule 2.1.17.) In effect, litigants must obtain permission to seek judicial intervention in most discovery disputes.

As explained in the PDC request, the special interrogatories pertained to the damages allegations in the complaint. Defendants informed the trial court that plaintiffs had neither responded to the special interrogatories nor paid the monetary sanctions. Given numerous additional discovery problems (see further discussion, *post*), defendants argued for sanctions, up to and including "a terminating sanction that the action be dismissed with prejudice."

On September 12, 2017, the trial court granted permission for defendants to file a motion with regard to "the dispute set out in the Request for Pretrial Discovery Conference." By that point defendants had filed multiple PDC requests, so the minute

5.

order was ambiguous in terms of which PDC request was being granted. However, neither party expressed any concerns over the ambiguity.

On September 25, 2017, defendants moved "for an order that issue and/or an evidence and/or a terminating sanctions [*sic*] be imposed against [p]laintiffs" (the motion for sanctions). The moving papers focused on plaintiffs' responses to *form* interrogatories. However, defendants' arguments and evidence also addressed plaintiffs' failure to provide responses to the special interrogatories despite having been ordered to do so nearly five months earlier. The motion for sanctions is discussed in more detail under a separate heading.

On October 12, 2017, while the motion for sanctions was pending, plaintiffs served responses to the special interrogatories. On November 2, 2017, the motion was heard and taken under submission. The next day, defense counsel attempted to meet and confer with plaintiffs' attorney in writing about the responses to the special interrogatories. On November 13, 2017, defense counsel made another unsuccessful effort to meet and confer with opposing counsel.

On November 17, 2017, defendants filed a PDC request concerning the special interrogatories. Defendants alleged plaintiffs' responses were "totally deficient" and sought permission to file an additional discovery motion.

On November 29, 2017, the motion for sanctions was granted. The trial court's imposition of terminating sanctions mooted the pending PDC request, which was never ruled upon.

***Requests For Production of Documents***

Defendants' requests for production of documents were propounded upon both plaintiffs in a single document. This was in contrast to the requests for admissions and form interrogatories, which were propounded upon plaintiffs individually in four separate documents. Plaintiffs would later argue the differing formats caused them to be confused about their respective discovery obligations.

6.

On February 15, 2017, defendants were served with an unverified set of materials entitled "Plaintiff Mane Arax's Response to Request For Production of Documents, Set One." (Some capitalization omitted.) A verification form signed by Arax was provided to defendants at a later date. However, plaintiffs have acknowledged the verification form "was unsigned at the time of service."

On March 24, 2017, defendants filed a motion to compel plaintiff Simka to respond to the requests for production of documents. (See § 2031.300, subd. (b).) Defendants also sought monetary sanctions. (*Id.*, subd. (c).) Plaintiffs did not oppose the motion.

On May 10, 2017, the trial court granted defendants' motion. Plaintiff Simka was ordered to serve verified responses to the requests for production of documents "within 10 days." The trial court also imposed sanctions in the amount of $260, payable "within 30 days."

Plaintiff Simka did not comply with the trial court's order. On August 31, 2017, defendants filed the previously discussed PDC request. The request concerned both the outstanding special interrogatories and Simka's failure to respond to requests for production of documents.

On September 12, 2017, plaintiffs filed an opposition to the PDC request. For the first time, plaintiffs argued defendants' previous motion to compel Simka's responses was merely intended to compel his *verification* of the responses attributed to Arax. In other words, plaintiffs claimed the material served on February 15, 2017, was intended to constitute a joint response to the requests for production of documents. Plaintiffs alleged the reason Simka did not oppose the motion was because "plaintiff had already served responses and believed that would eliminate the necessity for the motion."

Defendants maintain plaintiffs' alleged interpretation of the motion to compel is untenable. One problem is the fact defendants' moving papers acknowledged receipt of Arax's responses and specifically complained of Simka's "complete failure to respond."

7.

In addition, there is no evidence in the record of Simka ever verifying the February responses. If plaintiffs believed the motion only concerned Simka's failure to verify the responses, why did Simka not provide the verification even after defendants' motion was granted?

The document requests did not necessarily permit identical responses from each plaintiff. For example, request No. 13 asked for "all documents that support, refer or relate to your claim to own the property." (Capitalization omitted.) Request No. 14 asked for "all documents that support, refer or relate to any conveyance of the property involving you …." (Capitalization omitted.) Moreover, defense counsel's declaration in support of the motion for sanctions noted Arax had "produced no documents pertaining to any conveyance or ownership."

On October 5, 2017, while the motion for sanctions was pending, plaintiffs served new responses to the requests for production of documents. Plaintiffs later said this was done "out of an abundance of caution." The October responses are not part of the record on appeal, but plaintiffs have indicated they were duplicative of the February responses except for the addition of Simka's name as a responding party.

The February responses answered each of defendants' 33 enumerated requests with a string of pro forma objections followed by these statements:

> "All documents in the demanded category, not subject to the foregoing objections and that are in the possession, custody and control of this responding party are produced herewith as indicated above. Plaintiffs are unable to produce any other documents responsive to the request because the particular items have never been in the possession, custody or control of the responding party or are lost or destroyed."

The responses included 45 pages of documents, but there was no explanation of which items corresponded to the 33 categories of documents requested. (See § 2031.280, subd. (a) ["Any documents or category of documents produced … shall be identified with the specific request number to which the documents respond"].)

*Requests For Admissions*

Defendants' requests for admissions were designed to conclusively establish plaintiffs' lack of standing to assert their claims and/or lack of rights under the 1990 easement agreement upon which the claims were based. For example, Arax and Simka were asked to admit they did not hold title to the property. They were also asked to admit the genuineness of the grant deeds cited in defendants' successful opposition to their request for preliminary injunctive relief.

On February 15, 2017, plaintiffs served unverified responses to the requests for admissions. More than half of the responses said, "This responding party does not have sufficient information to admit or deny this request at this time." Among other examples, the answer was given to the requests concerning ownership and title to the property, as well as the genuineness of the grant deeds.

On March 10, 2017, defendants filed a motion to have all matters specified in the requests for admissions deemed admitted. (See § 2033.280, subd. (b).) Defendants relied on the principle that unverified "fact-specific responses," even if served on or before a discovery deadline, are untimely as a matter of law. (*Food 4 Less Supermarkets*, *Inc. v. Superior Court* (1995) 40 Cal.App.4th 651, 657–658; see *Appleton v. Superior Court* (1988) 206 Cal.App.3d 632, 636 ["Unsworn responses are tantamount to no responses at all"].) When responses to requests for admissions "are not timely served," the requesting party "'may move for an order that the genuineness of any documents and the truth of any matters specified in the requests be deemed admitted ….'" (*St. Mary v. Superior Court* (2014) 223 Cal.App.4th 762, 776.)

On March 29, 2017, plaintiffs' attorney contacted defense counsel by phone to advise the verifications were forthcoming. Defense counsel asked why the verifications were six weeks late and how it was possible for plaintiffs to be incapable of admitting or denying they held title to, and/or had an ownership interest in, the property. Defense

9.

counsel was especially puzzled by Arax's responses, since she had filed a sworn declaration earlier in the case claiming to be "the owner" of the property.

On April 3, 2017, plaintiffs filed an opposition to the motion. Based on their service of verifications a few days earlier, plaintiffs argued they were now in substantial compliance with the governing law. (See § 2033.280, subd. (c).) However, plaintiffs did not address their failure to comply with section 2033.220, subdivision (c). "If a responding party gives lack of information or knowledge as a reason for a failure to admit all or part of a request for admission, that party shall state in the answer that a reasonable inquiry concerning the matter in the particular request has been made, and that the information known or readily obtainable is insufficient to enable that party to admit the matter." (*Ibid.*) In most of plaintiffs' responses, they alleged an inability to make an admission or denial but did not attest to having made a reasonable investigation.

In a tentative ruling, the trial court stated its intention to grant the motion as to all requests for which plaintiffs had failed to comply with section 2033.220 unless adequate responses were provided before the hearing date. Plaintiffs served supplemental responses in time to avoid those consequences. Arax's revised answers were substantially the same as before except for her admission of two facts not materially relevant to this appeal.

With regard to the issues of ownership and title to the property, Arax stated, "Plaintiff has made a reasonable inquiry concerning the matter …. The information known or readily obtainable to the plaintiff is insufficient to allow this responding party to admit the matter at this time." The same response was given to the requests to admit the genuineness of the grant deeds.

In Simka's revised responses, he changed his answers to the ownership and title questions to "deny." Simka thus claimed title to, and an ownership interest in, the property. However, his responses concerning the grant deeds mirrored those of Arax.

10.

*Form Interrogatories*

Initially, plaintiffs failed to provide any responses to the form interrogatories. On March 10, 2017, defendants filed a motion to compel plaintiffs to respond. (See § 2030.290, subd. (b).) Defendants also requested monetary sanctions. (*Id*., subd. (c).) Plaintiffs did not oppose the motion.

On March 29, 2017, plaintiffs' attorney e-mailed defense counsel copies of plaintiffs' signed verification forms, but no responses. The verifications were dated February 15, 2017, i.e., the original deadline for the responses. On April 4, 2017, plaintiffs served the actual responses. The responses were dated March 30, 2017, and were accompanied by new verifications bearing the same date.

On April 5, 2017, defendants filed a document entitled "Notice of Plaintiffs' Non-Opposition to Defendants' Motion To Compel …." (Some capitalization omitted.) The filing detailed the information we have summarized in the preceding paragraph, but it also alleged plaintiffs' responses were "incomplete and insufficient." Defendants specifically complained of the responses to form interrogatory No. 17.1.

Form interrogatory No. 17.1 sought information related to plaintiffs' responses to the requests for admissions. For all responses other than those constituting "an unqualified admission," they were asked to "state all facts upon which" the responses were based; the identities and contact information of all persons with knowledge of those facts; and all documents supporting the responses, plus the identities and contact information of any persons in possession of the documents. Plaintiffs' responses were devoid of any information about requests for admissions Nos. 20 through 30, which included matters concerning the genuineness of the grant deeds in the chain of title to the property. As such, and notwithstanding plaintiffs' belated partial compliance, defendants requested their motion to compel "complete and straight-forward responses" to the form interrogatories "be granted in [its] entirety."

11.

On May 2, 2017, the trial court granted defendants' motion and imposed monetary sanctions. The motion had also pertained to unanswered special interrogatories, so the trial court's order instructed plaintiffs to "serve verified responses without objections to the form and special interrogatories within ten days of the date of service of this order." Because of the generic language, and since plaintiffs had served responses to form interrogatories while the motion was pending, the parties apparently did not interpret the order to mean any supplemental responses were being compelled.

Two days later, on May 4, 2017, defense counsel sent a meet-and-confer letter demanding supplemental responses to form interrogatories Nos. 2.2, 2.5, 2.6, 2.7, 7.1, 7.3, 9.1, 9.2, 14.1, 17.1, and 50.2. In a lengthy discussion of interrogatory No. 17.1, defense counsel noted plaintiffs' complete failure to identify any documents or witnesses. "Moreover, no responses for Requests for Admission Nos. 15 [and] 20 through 30 were provided."

The letter continued: "As to Ms. Arax's response to Request Nos. 1 and 2, she claims she has insufficient information to admit or deny that she does not hold title to or own the property, but in her 17.1 responses, claims 'Plaintiffs hold title to [and own] the property.' As previously explained, each answer in the response to the interrogatories must be as complete and straightforward as the information reasonably available to the responding party permits. Accordingly, Plaintiffs response … is insufficient."

Plaintiffs did not respond to the first meet-and-confer letter. On May 15, 2017, defense counsel sent a letter asking plaintiffs to "please participate in the informal meet and confer process in an attempt to avoid requiring the Court's involvement in resolving the present discovery dispute." Plaintiffs did not respond to the second meet-and-confer letter.

On May 23, 2017, defendants filed a PDC request. In filling out the trial court's preprinted PDC request form, defendants checked the box next to the line reading, "A dispute has arisen regarding form or special interrogatories." However, in the space

12.

provided for an explanation of all relevant "meet and confer efforts," defendants provided a detailed summary that made clear the PDC request pertained exclusively to plaintiffs' responses to the form interrogatories.

Plaintiffs did not oppose the PDC request. Rather than authorizing the filing of another motion, the trial court issued a written discovery order. On June 14, 2017, plaintiffs were ordered to "give verified responses to the special interrogatories at issue … within 15 days."[2] The order warned a failure to comply would subject plaintiffs "to further possible sanctions—up to and including evidence exclusion."

On June 16, 2017, defendants filed a request for clarification of the discovery order. Defendants explained they were confused by the reference to special interrogatories because their PDC request had "made no mention of special interrogatories." The trial court did not respond.

On July 5, 2017, plaintiffs served supplemental responses to the form interrogatories. On August 11, 2017, defense counsel sent another meet-and-confer letter. Among numerous complaints listed therein, the letter noted "the further response[s] to Form Interrogatory No. 17.1 [are] essentially the same responses that were previously provided."

Plaintiffs' supplemental responses did address the previously ignored issue of the genuineness of the grant deeds. However, the responses stated, in relevant part, "Each of these requests concerns the authenticity of documents. Plaintiff is unable to authenticate the documents that are attached because the documents attached are not original documents." Defense counsel described those responses as "woefully inadequate." Complete responses to the interrogatories at issue were demanded by no later than

---

[2]As confirmed by the trial court's reference in the preceding sentence to "the discovery more fully described in the [PDC] request," use of the term "special interrogatories" instead of form interrogatories can only be explained as an inadvertent mistake.

13.

August 18, 2017. Defendants warned they would seek "all available remedies, including issue, evidence, and terminating sanctions," if plaintiffs failed to comply.

Plaintiffs did not respond to the third meet-and-confer letter. On August 22, 2017, defense counsel sent a followup correspondence warning that if further responses were not immediately provided, defendants would seek judicial intervention and pursue "all available remedies." Plaintiffs did not respond to the fourth meet-and-confer letter.

On August 23, 2017, defendants filed a PDC request setting forth the same grievances outlined in their meet-and-confer letters. On September 5, 2017, plaintiffs filed an opposition to the PDC request. The opposition stated, in relevant part, "At some point, enough is enough. Plaintiffs contend that the responses are in compliance with the discovery act and that defendant is overzealously using the discovery process to harass and unduly burden these plaintiffs." On September 12, 2017, the trial court issued an order permitting defendants to file another discovery motion.

### Motion for Sanctions

On September 25, 2017, defendants filed the motion for sanctions. The motion was based on plaintiffs' failure to provide complete responses to the form interrogatories. However, the moving papers and supporting evidence also addressed the special interrogatories, requests for admissions, requests for production of documents, and plaintiffs' failure to pay any of the previously imposed monetary sanctions. Defendants argued "the totality of the circumstances" demonstrated plaintiffs' willful refusal to satisfy their discovery obligations.

On October 16, 2017, plaintiffs filed an untimely opposition to the motion. Although the motion pertained to the form interrogatories, plaintiffs did not address the substantive arguments in defendants' moving papers. Instead, a variety of excuses were given for the prior discovery violations. Simka's failure to respond to the document demand was blamed on the format of defendants' requests. The requests for admissions controversy was downplayed as a simple dispute over late verifications. The eight-month

14.

delay in service of special interrogatory responses was characterized as inadvertent and vaguely attributed to the discrepancy in the trial court's order of June 14, 2017 ("Somehow in the confusion between Form and Special Interrogatories, the responses to Special Interrogatories never actually got served").

In a written tentative ruling, the trial court indicated terminating sanctions and additional monetary sanctions would be imposed. At the motion hearing, plaintiffs focused on a misstatement in the tentative ruling, which read: "In May, this Court ordered that plaintiffs provide further verified responses to form interrogatories and special interrogatories." In fact, the order of May 2, 2017, was made in relation to a motion to compel initial responses. Aside from that issue, the crux of plaintiffs' argument was a denial of any "willful" discovery violations or disobedience of court orders.

On November 29, 2017, the trial court issued an order adopting is tentative ruling. In relevant part, it noted plaintiffs' failure "to serve the special interrogatory responses for several months." The responses to form interrogatories were described as "invitations for defendants to guess at what facts in the pleadings and what of the entire document production of plaintiffs might support various contentions and damages claimed."

In reliance on *Deyo v. Kilbourne* (1978) 84 Cal.App.3d 771, the trial court wrote "the penalty for refusing to obey an order of the court concerning discovery is a sanction placing the party seeking discovery in the position he would have been in if he 'had obtained the discovery sought and it had been completely favorable to his cause.'" (Quoting *id*. at p. 793, boldface omitted.) Applying the holding to this case, the trial court concluded: "Had the responses been all that defendants hoped for, or if plaintiffs were limited to the responses in proving their case at trial, defendants would prevail. The lack of regard for basic discovery duties shown in the further responses to the form interrogatories, and the failure to serve further responses until ordered for the special interrogatories, demonstrates a pervasive misconduct, warranting dismissal."

15.

The judgment, entered on or about January 12, 2018, dismissed plaintiffs' action with prejudice and included monetary sanctions of $3,940. A notice of entry of judgment was served approximately 12 days later. On February 21, 2018, plaintiffs filed their notice of appeal.

## DISCUSSION

### I. Standard of Review

We review a trial court's imposition of discovery sanctions for abuse of discretion. "'"The power to impose discovery sanctions is a broad discretion subject to reversal only for arbitrary, capricious, or whimsical action. [Citations.] Only two facts are absolutely prerequisite to imposition of the sanction: (1) there must be a failure to comply … and (2) the failure must be wilful."'" (*Vallbona v. Springer* (1996) 43 Cal.App.4th 1525, 1545.)

### II. Law and Analysis

Following notice and the opportunity for a hearing, a trial court may impose sanctions for "misuse of the discovery process," which includes "[f]ailing to respond or to submit to an authorized method of discovery," and "[d]isobeying a court order to provide discovery." (§§ 2023.010, subds. (d) & (g), 2023.030.) Permissible sanctions include a "terminating sanction" in the form of an order "dismissing the action, or any part of the action, of [the sanctioned] party." (§ 2023.030, subd. (d)(3).) The propriety of terminating sanctions is determined by the totality of the circumstances, including the willfulness of the improper acts, the detriment to the propounding party, and the number of formal and informal attempts to obtain the discovery. (*Lang v. Hochman* (2000) 77 Cal.App.4th 1225, 1244–1246.)

Plaintiffs claim to have served timely responses to much of the discovery and to have "complied with all discovery orders." Those assertions are simply not true. The record shows "misuse of the discovery process" within the meaning of section 2023.010.

16.

(*Id.*, subds. (d), (f), (g), (i); see *Ellis v. Toshiba America Information Systems*, *Inc.* (2013) 218 Cal.App.4th 853, 877–878 ["Misuse of the discovery process includes disobeying a court order to provide discovery and failing to meet and confer in good faith to resolve a discovery dispute when required by statute to do so"].)

With the exception of legal objections, unverified discovery responses are not considered timely—even if they are served within the discovery deadline. (*Food 4 Less Supermarkets*, *Inc. v. Superior Court*, *supra*, 40 Cal.App.4th at pp. 657–658; *Appleton v. Superior Court*, *supra*, 206 Cal.App.3d at p. 636.) The only materials served by the deadline of February 15, 2017, were plaintiffs' unverified responses to requests for admissions and Arax's unverified responses to requests for production of documents. Therefore, none of plaintiffs' discovery responses were timely.

On May 2, 2017, plaintiffs were ordered to respond to the special interrogatories "within ten days." The responses were not served until October 12, 2017. On May 10, 2017, plaintiff Simka was ordered to serve responses to the requests for production of documents "within 10 days." Simka took no further action relative to the document requests until October 5, 2017.

Plaintiffs' initial responses to the form interrogatories were seven weeks late and served only after defendants had filed a motion to compel. Plaintiffs subsequently ignored two meet-and-confer letters, which justifiably complained of incomplete responses. The failure to meet and confer led to defendants' filing of a PDC request, which resulted in the trial court's order of June 14, 2017. Plaintiffs eventually filed supplemental responses, but they were deficient in certain material respects. Plaintiffs then proceeded to ignore two additional meet-and-confer letters, which led to defendants' PDC request of August 23, 2017, and ultimately the motion for sanctions.

The next issue is the trial court's finding of willfulness. Willfulness in this context means a "conscious or intentional failure to act, as distinguished from accidental or involuntary noncompliance." (*Deyo v. Kilbourne*, *supra*, 84 Cal.App.3d at pp. 787–788.)

17.

"Lack of diligence may be deemed willful in the sense that the party understood his obligation, had the ability to comply, and failed to comply.  [Citation.]  A willful failure does not necessarily include a wrongful intention to disobey discovery rules."  (*Id*. at p. 787.)  In *Liberty Mutual Fire Ins. Co. v. LcL Administrators*, *Inc*. (2008) 163 Cal.App.4th 1093, findings of "willful" discovery violations involving "evasive" behavior were upheld based on "responses that submitted no meaningful information" and the fact the responding party had "repeatedly ignored meet and confer letters [and] continued to parrot the same answers after two orders compelling it to give further responses."  (*Id*. at pp. 1102–1103.)

"Where the trial court finds the essential fact of willfulness, that finding is entitled to deference on appeal."  (*Sauer v. Superior Court* (1987) 195 Cal.App.3d 213, 228.)  "We view the entire record in the light most favorable to the court's ruling, and draw all reasonable inferences in support of it.  [Citation.]  We also defer to the trial court's credibility determinations."  (*Stephen Slesinger*, *Inc. v. Walt Disney Co*. (2007) 155 Cal.App.4th 736, 765.)

Defendants complained of several deficient responses, but those given in response to form interrogatory No. 17.1 concerned potentially dispositive evidence.  Viewed in the light most favorable to the judgment, the record permits the inference of plaintiffs' willful failure to provide complete responses to the discovery concerning their ownership of the property and rights, or lack thereof, under the 1990 easement agreement.

The dubious behavior began with the requests for admissions, when plaintiffs claimed an inability to admit or deny whether they held title to, or had an ownership interest in, the property.  They also denied being able to admit or deny the genuineness of the relevant grant deeds.  In supplemental responses, despite claiming to have "made a reasonable inquiry concerning the matter," plaintiffs again claimed to be unable to admit or deny the genuineness of the deeds.  Although purportedly based on all "readily

18.

obtainable" information, the responses effectively disregarded the fact the original documents were said to be on file with the Fresno County Recorder's Office.

As discussed, in relation to all responses other than unqualified admissions, form interrogatory No. 17.1 required plaintiffs to "state all facts" upon which their denials or other nonadmissions were based; the identities and contact information of all persons with knowledge of those facts; and *all documents supporting the responses*, plus the identities and contact information of any persons in possession of the documents. Plaintiffs' original responses concerning their nonadmission of lack of title or ownership were, "Plaintiffs hold title to the property" and "Plaintiffs own the property." The supplemental responses contained the exact same answers, which were objectively deficient.

Plaintiffs' original responses to form interrogatory No. 17.1 contained no explanation of their nonadmission of the genuineness of the grant deeds and other documents. The supplemental responses said, "Plaintiff is unable to authenticate the documents that are attached because the documents attached are not original documents." Defendants were clearly entitled to more information, e.g., whether plaintiffs had attempted to compare the copies of the deeds attached to the requests with those on file at the Fresno County Recorder's Office.

In their briefing, plaintiffs argue terminating sanctions "are inappropriate when there is no showing that the court could not obtain compliance by using lesser sanctions." They cite *Lopez v. Watchtower Bible & Tract Society of New York, Inc.* (2016) 246 Cal.App.4th 566, but what the case actually says is "a terminating sanction should generally not be imposed until the court has attempted less severe alternatives and found them to be unsuccessful and/or the record clearly shows lesser sanctions would be ineffective." (*Id.* at p. 604.) The trial court *did* try less severe alternatives, multiple times, by imposing monetary sanctions and warning of harsher punishment for future

19.

violations. Plaintiffs continued to shirk their discovery obligations and allowed the financial penalties to accrue without paying them.

In a separate argument, plaintiffs allege the trial court improperly dismissed the action because of their failure to pay the monetary sanctions. However, at the motion hearing, the trial judge said, "The Court is not dismissing an action because monetary sanctions weren't paid. The Court put into its tentative the history of the case[,] of which that is a part." We construe the record in the light most favorable to the judgment. (*Stephen Slesinger*, *Inc. v. Walt Disney Co.*, *supra*, 155 Cal.App.4th at p. 765.)

"The trial court should consider both the conduct being sanctioned and its effect on the party seeking discovery and, in choosing a sanction, should '"attempt[] to tailor the sanction to the harm caused by the withheld discovery."'" (*Doppes v. Bentley Motors*, *Inc.* (2009) 174 Cal.App.4th 967, 992.) Those guidelines were followed in this case. Defendants' efforts to obtain critical evidence relating to the issues of standing, liability, and damages were stymied for the better part of a year. With a trial date of April 30, 2018, the deadline to file a motion for summary judgment or summary adjudication was rapidly approaching when the motion for sanctions was heard in November 2017. Furthermore, plaintiffs had already failed to comply with previous discovery orders.

Although not discussed by the parties, there is some conflicting authority on the issue of whether terminating sanctions require a showing of prejudice. For example, the following statement appears in *Moofly Productions*, *LLC v. Favila* (2020) 46 Cal.App.5th 1: "[T]erminating sanctions are appropriate only if a party's failure to obey a court order actually prejudiced the opposing party." (*Id.* at p. 11.) However, the only support provided for the quote is a "see" citation to *Morgan v. Ransom* (1979) 95 Cal.App.3d 664 at pages 669–670, and *Morgan* has been criticized as "unpersuasive authority because it was decided before the Civil Discovery Act of 1986, which substantially overhauled the discovery statutes." (*Liberty Mutual Fire Ins. Co. v. LcL Administrators*, *Inc.*, *supra*, 163

Cal.App.4th at p. 1104.) Thus, other cases hold "a party seeking terminating sanctions for another party's discovery misconduct need not prove prejudice where, as here, the misconduct relates to discovery the moving party propounded." (*Siry Investment*, *L.P. v. Farkhondehpour* (2020) 45 Cal.App.5th 1098, 1122, rev. granted July 8, 2020, S262081, citing *Electronic Funds Solutions*, *LLC v. Murphy* (2005) 134 Cal.App.4th 1161, 1184.)

Even assuming prejudice is required, the record provides the necessary support. Defendants' efforts to defend and extricate themselves from involuntary litigation was hindered by excessive delays resulting from plaintiffs' failure to respond to discovery requests, ignoring of repeated meet-and-confer efforts, and refusal to fully supplement deficient responses. (See *Liberty Mutual Fire Ins. Co. v. LcL Administrators*, *Inc.*, *supra*, 163 Cal.App.4th at pp. 1102–1105.) "Prejudice is inherent in such tactics." (*Id.* at p. 1105.)

"The question before us '"is not whether the trial court should have imposed a lesser sanction; rather, the question is whether the trial court abused its discretion by imposing the sanction it chose."'" (*Liberty Mutual Fire Ins. Co. v. LcL Administrators*, *Inc.*, *supra*, 163 Cal.App.4th at p. 1105.) Given the totality of the circumstances, we conclude the trial court acted within the broad scope of its discretion. (See *American Home Assurance Co. v. Société Commerciale Toutélectric* (2002) 104 Cal.App.4th 406, 435 ["The court's discretion to impose discovery sanctions is broad, subject to reversal only for manifest abuse exceeding the bounds of reason"].)

## III. Plaintiffs' Request For Judicial Notice

Plaintiffs ask us to take judicial notice of well over 200 pages of documents consisting of all discovery requests propounded upon them by defendants and nearly all of their responses to the same. Almost all of those items are already part of the record on appeal by virtue of their inclusion in the Respondents' Appendix, which makes judicial notice of the material redundant and unnecessary. The lone exception is approximately

21.

43 pages of records allegedly produced as part of Arax's original response to requests for production of documents. However, there is no indication the documents were ever filed with the trial court, and plaintiffs have not made the necessary showing under Evidence Code sections 451, 452, and/or 459. For these reasons, the request for judicial notice is denied.

## DISPOSITION

The judgment is affirmed. Defendants shall recover their costs on appeal.

PEÑA, J.

WE CONCUR:


DETJEN, Acting P.J.


FRANSON, J.

22.