Filed 2/29/24  Chavez v. Normandie/Wilshire Retirement Hotel CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| ARCELIA JIMENEZ CHAVEZ, et al.,<br><br>        Plaintiffs and Appellants,<br><br>        v.<br><br>NORMANDIE/WILSHIRE RETIREMENT HOTEL, INC., et al.,<br><br>        Defendants and Respondents. | B316091 consolidated with B317123<br><br>(Los Angeles County Super. Ct. No. 19STCV06507) |

APPEALS from judgments of the Superior Court of the County of Los Angeles, Steven J. Kleifield, Judge.  Affirmed.

Law Offices of Robert Scott Shtofman, Robert Scott Shtofman, Law Offices of Jose Perez, Jose Perez, for Plaintiffs and Appellants.

Clark Hill, Richard H. Nakamura Jr., Marc S. Katz, and Sue S. Junn, for Defendants and Respondents

Normandie/Wilshire Retirement Hotel, Inc., dba California Healthcare & Rehabilitation Center and Longwood Management Corp.

Prindle, Goetz, Barnes & Reinholtz, Jack R. Reinholtz and Cynthia A. Palin, for Defendant and Respondent Muhammad Anwar.

---

## I.    INTRODUCTION

The trial court granted defendants'[1] motions for terminating sanctions based on plaintiffs'[2] failure to comply with the court's orders compelling responses to written discovery.  On appeal, plaintiffs challenge the sufficiency of the evidence

---

[1]    Defendants are Dr. Muhammad Anwar (Dr. Anwar) and two corporations, Normandie/Wilshire Retirement Hotel, Inc., (Normandie/Wilshire) and Longwood Management Corp. (Longwood).  According to the complaint, Normandie/Wilshire was a "24-hour skilled nursing facility" that was owned, operated, and managed by Longwood.  Except when clarity requires separate reference to these two entities, they will be referred to collectively as Normandie.

[2]    Plaintiffs are four individuals—Arcelia Jimenez Chavez, Alicia, Antonio, and Guadalupe Jimenez (individual plaintiffs)— and the estate of Jose Maria Jimenez and Jose Maria Jimenez, individually, by and through his successor-in-interest, Arcelia Jimenez Chavez (estate plaintiffs).  When necessary for clarity, we will refer to all the individual plaintiffs by their first names. We will refer to the decedent as Jimenez.

supporting the court's findings and raise multiple claims of abuse of discretion. We affirm.

## II.    PROCEDURAL BACKGROUND

A.    *Pleadings*

On December 14, 2018, Jimenez was suffering from dementia and other age-related illnesses. That day, while under the care and supervision of Normandie/Wilshire's facility in Van Nuys, Jimenez wandered off the premises and was found dead four days later.

On February 26, 2019, plaintiffs filed a complaint against Normandie, asserting six causes of action for: elder abuse (Welf. & Inst. Code, § 15600 et seq.); negligence; negligent hiring; violation of residents' rights (Health & Saf. Code, § 1430, subd. (b)); wrongful death; and survivorship. The 128-paragraph pleading alleged, among other things, violations of multiple state and federal regulations governing skilled nursing facilities.

Normandie filed an April 2, 2019, petition to compel arbitration, but following plaintiffs' opposition, withdrew its petition on September 17, 2019. October 17, 2019, Normandie demurred and moved to strike the complaint.

On December 16, 2019, plaintiffs filed an amendment to their complaint adding Dr. Anwar as a defendant. He answered on January 24, 2020, with a trial date then scheduled for October 26, 2020.[3]

---

[3]    On July 24, 2020, Dr. Anwar filed an ex parte application to continue the trial date. Over plaintiffs' objection about the

3

The trial court ruled on Normandie's demurrer and motion to strike on February 28, 2020.  On May 19, 2020, Normandie answered the complaint.

B.      *Dr. Anwar's Written Discovery*

1.      <u>First Round</u>

On January 24, 2020, Dr. Anwar served each plaintiff with: (1) a set of special interrogatories comprised of seven contention interrogatories seeking the facts supporting their claims of elder abuse, negligence, and violation of "resident['s] rights," as well as the identities of persons with knowledge of those facts; (2) a set of form interrogatories seeking general background information about each plaintiff, information about plaintiffs' investigation of the incident, and information concerning any alleged statutory violations; and (3) a set of document demands.

2.      Second Round

On April 2, 2020, Dr. Anwar served Alicia with a second set of special interrogatories comprised of three questions seeking the identities of any health care facilities or hospitals where Jimenez resided prior to September 2017.

---

length of the requested continuance, the trial court granted the application and continued trial until June 21, 2021.

4

### 3. Dr. Anwar's Motions to Compel

After requesting and receiving two extensions of time, plaintiffs agreed to provide responses to Dr. Anwar's first round of written discovery by April 24, 2020. When plaintiffs failed to respond by that date, Dr. Anwar filed three motions to compel responses. Plaintiffs did not oppose the motions or seek a protective order limiting their response obligations.

On May 26, 2020, after Alicia failed to respond to his second set of special interrogatories, Dr. Anwar sent her a letter demanding responses. When Alicia failed to respond, Dr. Anwar filed his fourth motion to compel responses. Alicia did not oppose the motion or seek a protective order limiting her response obligations.

### 4. Orders Compelling Reponses and Awarding Sanctions

On August 4, 2020, the trial court held a hearing on Dr. Anwar's fourth motion to compel responses to the second set of special interrogatories. There were no appearances by either side. The court granted the motion, ordered responses to be served within 30 days, or on or before September 3, 2020, and imposed $760 in sanctions against Alicia, payable within 30 days.

On September 22, 2020, the trial court held a hearing on Dr. Anwar's three motions to compel responses to his first round of written discovery. Dr. Anwar appeared at the hearing, but plaintiffs did not. The court granted each motion, ordered responses to be served by October 12, 2020, and imposed

5

sanctions against all plaintiffs in the amount of $965 on each motion, for a total of $2,895, payable within 20 days.

One month later, on October 22, 2020, Dr. Anwar sent plaintiffs a letter demanding compliance with the trial court's orders compelling responses and imposing sanctions by November 5, 2020.  Plaintiffs did not respond to the demand.

### 5. Dr. Anwar's Terminating Sanctions Motion

On November 16, 2020, Dr. Anwar filed a motion for terminating sanctions, with the hearing scheduled for March 17, 2021.  The motion sought terminating or other sanctions based on plaintiffs' willful disobedience of the trial court's four orders compelling plaintiffs to respond to Dr. Anwar's first and second rounds of written discovery.  As of the date of the motion, plaintiffs had not served any responses to his written discovery and had not paid any of the sanctions awarded by the court.

### a. Ex Parte Application

On March 16, 2021—one day before the hearing on Dr. Anwar's motion for terminating sanctions—plaintiffs filed an ex parte application for relief under Code of Civil Procedure section 473, subdivision (b)[4] and leave to file a late opposition.  According to plaintiffs' counsel, they were never served with the motion.  Plaintiffs' counsel also represented that he and his co-counsel had

---

[4]     All further statutory references are to the Code of Civil Procedure.

6

completed plaintiffs' discovery responses and that they would be served "by the time of the [March 17, 2021,] hearing."

At the March 17, 2021, hearing, the trial court granted plaintiffs' ex parte application, continued the hearing to May 6, 2021, and granted plaintiffs leave to file their opposition.

### b. Partial Responses

On March 17, 2021, the individual plaintiffs[5] served verified responses to Dr. Anwar's first set of form interrogatories.

On March 20, 2021, three of the individual plaintiffs, Antonio, Guadalupe, and Arcelia, served verified responses to Dr. Anwar's first set of special interrogatories.

On April 29, 2021, Alicia served verified responses to Dr. Anwar's first set of document demands.

As of May 4, 2021: (1) the estate plaintiffs had not served any responses to Dr. Anwar's first set of form interrogatories; (2) Alicia and the estate had not responded to his first set of special interrogatories; (3) other than Alicia, no plaintiff had served responses to his first set of document demands; (4) Alicia had not responded to the order compelling responses to Dr. Anwar's second set of special interrogatories; (5) no plaintiff had responded to the order requiring production of prior pleadings and discovery; and, (6) no sanctions had been paid by any plaintiff.

---

[5]     Arcelia served responses that were not verified.

7

### c. Third and Fourth Rounds

On March 26, 2021, Dr. Anwar served Alicia with a third set, and the other three individual plaintiffs with a second set, of special interrogatories concerning six witnesses identified in plaintiffs' discovery responses, seeking the relationship of each witness to Jimenez and the information each witness knew about the claims in the complaint. Although responses to this discovery were due by April 30, 2021, plaintiffs failed to respond to it or seek a protective order limiting their response obligations.

On April 5, 2021, Dr. Anwar served Alicia with a fourth set, and the other three individual plaintiffs with a third set, of special interrogatories seeking personal identifying information about certain heirs of Jimenez who were omitted as parties to the complaint. On May 7, 2021, plaintiffs served objections to this discovery asserting that the information sought was irrelevant and did not provide any substantive responses.

## C. *Normandie's Discovery*

### 1. Normandie/Wilshire's Discovery to All Plaintiffs

On May 26, 2020, Normandie/Wilshire served its first round of written discovery on each plaintiff, including form and special interrogatories and requests for documents seeking, among other things, basic information about the facts, witnesses, and documents supporting plaintiffs' claims.

Plaintiffs' responses to Normandie/Wilshire's first round of written discovery were due on June 30, 2020. Plaintiffs requested and received two extensions of time, resulting in their

responses being due July 16, 2020. Plaintiffs, however, did not serve responses by that date or request a further extension.

On August 4, 2020, Normandie/Wilshire demanded compliance with its written discovery without objection by August 18, 2020. Plaintiffs did not respond to the demand or serve responses as of October 6, 2020, and they did not seek a protective order limiting their response obligations.

### 2. Longwood's Discovery to the Estate Plaintiffs

On May 26, 2020, Longwood served a first set of special interrogatories and first set of document demands on estate plaintiffs. Responses were due June 30, 2020.

Plaintiffs requested and received two extensions of time to respond to Longwood's discovery. Although their responses were due by July 16, 2020, plaintiffs failed to serve them or request further extensions of time. On August 4, 2020, Longwood demanded responses no later than August 18, 2020. Plaintiffs did not respond to the demand or serve responses as of October 6, 2020, or seek a protective order limiting their response obligations.

### 3. Normandie's Motions to Compel

On October 19, 2020, Normandie filed four motions to compel further responses to: (1) Normandie/Wilshire's first set of document demands; (2) Longwood's first set of special interrogatories; (3) Normandie/Wilshire's form and first set of special interrogatories; and (4) Longwood's first set of document

demands.  Plaintiffs did not file oppositions or seek a protective order.

4.      Orders Compelling Responses and Imposing
        Sanctions

On February 10, 2021, the trial court held a hearing on Normandie's motions to compel.  The parties appeared telephonically.  The court granted all four motions, ordered plaintiffs to provide verified responses without objection by March 1, 2021, and imposed sanctions in the amount of $500 per motion, for a total of $2,000.

When plaintiffs did not comply with the trial court's orders compelling responses and imposing sanctions by the March 1, 2021, deadline, Normandie sent plaintiffs a March 16, 2021, letter advising that it would be filing a motion for terminating sanctions.

On March 19, 2021, plaintiffs served their responses to Normandie/Wilshire's first set of form interrogatories.  They did not, however, serve responses to Normandie/Wilshire's first set of special interrogatories and first set of document demands; and, the estate plaintiffs did not serve any responses to Longwood's outstanding written discovery.

5.      Normandie's Terminating Sanctions Motion

On March 22, 2021, Normandie filed a motion for terminating or other sanctions pursuant to sections 2023.010 and 2030.290.  According to Normandie, plaintiffs had willfully failed to respond to written discovery that had been propounded over

10 months earlier, despite court orders compelling responses and imposing sanctions. Because trial was scheduled to commence in less than 90 days, and Normandie had not received responses to basic contention discovery requests first served in May 2020, it maintained that plaintiffs' discovery abuses had prejudiced its trial preparations, including its "ability to evaluate th[e] case [and] retain experts . . . ." In addition, Normandie argued that any late responses that may be served would require additional time to evaluate and follow-up discovery.

Plaintiffs' opposition to Normandie's terminating sanctions motion was due April 23, 2021, but they did not file or serve an opposition by that date. Instead, on April 30, 2021, the individual plaintiffs served responses to Normandie/Wilshire's first set of document demands; on May 2, 2021, the estate plaintiffs served responses to Normandie/Wilshire's first set of document demands; and, on May 3, 2021, the estate plaintiffs served responses to Longwood's first set of document demands. Plaintiffs did not, however, serve any responses to Normandie/Wilshire's first set of special interrogatories and the estate plaintiffs did not serve responses to Longwood's first set of special interrogatories.

D. *Proceedings on Consolidated Sanctions Motions*

1. Ex Parte Application re: Late Opposition

On May 5, 2021—the day before the hearing on the terminating sanctions motions—plaintiffs applied ex parte for leave to file a late opposition to Normandie's motion. According to plaintiffs, they had answered all of Dr. Anwar's written

11

discovery and all of Normandie's written discovery, with the exception of the two sets of special interrogatories propounded by those defendants, responses to which would be served "<u>within the next 24 hours</u> . . . ." Plaintiffs' counsel also complained that he had been required to: respond to summary judgment motions in an unrelated matter; brief and argue an unrelated appeal; and cope with the COVID-19 infections of two family members.

### 2. Consolidated Opposition

On May 5, 2021, plaintiffs also filed a consolidated opposition to the separate motions of Dr. Anwar and Normandie for terminating sanctions. They contended that: (1) they had substantially complied with their written discovery obligations by responding to 18 of the 20 sets of outstanding discovery propounded by defendants; (2) the purpose of sanctions, to achieve compliance with discovery obligations, would not be served by the requested terminating sanctions orders; (3) they should not be punished for the acts or omissions of their attorneys; (4) the requested orders were contrary to the public policy favoring resolution of disputes on their merits; and (5) defendants had not been prejudiced by the delay in responding to discovery. Plaintiffs did not propose a specific lesser sanction or request a continuance of the trial date.

### 3. Ruling on Application

At the May 6, 2021, hearing on the terminating sanctions motions, the trial court, noting the drastic nature of the requested terminating sanctions orders, granted plaintiffs' ex

12

parte application, deemed plaintiffs' consolidated opposition filed as of that date, and continued the hearing on the sanctions motions to May 19, 2021. The court also ordered defendants to file their replies by May 12, 2021, and granted them leave to address whether they would be prejudiced if the court did not grant terminating sanctions.

### 4. Replies

On May 11, 2021, Normandie filed its reply listing the written discovery subject to the trial court's orders to which plaintiffs had not yet responded, including five sets of special interrogatories propounded by Normandie/Wilshire to the estate plaintiffs and the four individual plaintiffs and one set propounded by Longwood to the estate plaintiffs. Normandie argued that a lesser sanction was not warranted as plaintiffs' discovery abuses were willful and it been prejudiced by plaintiffs' delays in responding to discovery in that: (1) it did not have the basic facts, witnesses, and documents it first sought in May 2020 concerning plaintiffs' claims of negligence and recklessness; and, (2) with the discovery cutoff now only days away and trial only a month beyond that, there would be no time to conduct follow-up discovery or to subpoena nonparty witnesses for deposition and to produce documents for inspection.

Dr. Anwar filed his reply on May 12, 2021, detailing the significant amount of outstanding written discovery to which plaintiffs had not yet responded. Dr. Anwar also argued that he had been prejudiced by plaintiffs' conduct in failing to respond to discovery, including their failure to answer questions about

13

Jimenez's prior hospitalizations, his medical history, and unnamed heirs.

### 5. Further Responses

On May 17, 2021, plaintiffs provided responses to Dr. Anwar's request for prior pleadings/discovery and the estate plaintiffs responded to set one of his special interrogatories and set one of his document demands. The next day, Alicia and the estate plaintiffs provided responses to Dr. Anwar's first set of form interrogatories. But, as of May 19, 2021, plaintiffs Arcelia, Antonio, and Guadalupe had not responded to his first set of requests for production of documents. And, plaintiffs had provided no responses to Dr. Anwar's third round of written discovery.

### 6. May 19, 2021, Hearing

On May 19, 2021, the trial court held a hearing on the consolidated sanctions motions. At three different points during the hearing, plaintiffs suggested that a continuance would be appropriate, but the trial court did not expressly respond.

Following argument, the trial court entered its order granting the motions. It noted that, due to plaintiffs' "clear violation" of its orders, defendants were required to "wait[ ] for the responses to basic discovery for over a year" and that with trial set for June 21, 2021, and a discovery cutoff of May 21, 2021, "there [was] no opportunity for the typical follow-up discovery." The court also observed that plaintiffs provided "no explanation in the late-filed opposition as to why [they] did not comply with

the Court's three discovery orders. These orders were not idle acts. Defendants were entitled to basic information regarding the facts, evidence, and contentions of [p]laintiffs."

The trial court then detailed the prejudice defendants had suffered as a result of plaintiffs' noncompliance with their discovery obligations and court orders, including information about late-disclosed witnesses and unserved heirs which could result in defendants being "surprised at trial, which defeats the whole purpose of the [Civil] Discovery Act.[6]" The court also noted that a further continuance would have a detrimental effect on Dr. Anwar's practice.

The trial court concluded that "[n]o justification has been shown for the violation of three court orders. Plaintiffs have misused the discovery process. The Court must necessarily conclude that the egregious violations were willful. Had there been compliance with the court orders, [d]efendants would have no reason for complaint. They have been prejudiced by the delay. [¶] A lesser sanction would not suffice. Any lesser sanction would require another continuance of the trial. The Court will not do so."

---

[6]     Section 2016.010 (Civil Discovery Act).

15

E.    *Judgments and Appeals*[7]

On July 21, 2021, the trial court entered judgment in favor of Normandie.  On September 27, 2021, plaintiff filed a notice of appeal from that judgment, case number B316091.

On September 3, 2021, the trial court entered judgment in favor of Dr. Anwar.  On November 1, 2021, plaintiffs filed a notice of appeal from that judgment, case number B317123.

Based on plaintiffs' motion, we ordered the two appeals consolidated for briefing, argument, and decision.[8]

## III.   DISCUSSION

A.    *Standard of Review*

In reviewing a trial court's order granting terminating sanctions, "[w]e accept the trial court's factual determinations concerning misconduct if they are supported by substantial

---

[7]    Plaintiffs filed three post-trial motions—for reconsideration, for new trial, and to vacate—that were either denied or not expressly ruled upon.  Plaintiffs waived any contentions on appeal concerning those motions by either failing to brief or brief adequately those contentions.  (*Shaw v. Hughes Aircraft Co.* (2000) 83 Cal.App.4th 1336, 1345; *In re Marriage of Falcone & Fyke* (2012) 203 Cal.App.4th 964, 1004.)

[8]    Dr. Anwar's motion to augment the record to include a copy of Exhibit 2 to that motion is denied.  The document, a notice of the court-ordered limited scope of the original deposition of Dr. Anwar, was not designated and is not necessary to our disposition of the consolidated appeals.

16

evidence.  [Citation.]  We review the order to issue a terminating sanction based on those factual findings for abuse of discretion.  [Citation.]"  (*Osborne v. Todd Farm Service* (2016) 247 Cal.App.4th 43, 51.)

B.    *Applicable Law*

""""The power to impose discovery sanctions is a broad discretion . . . .""  [Citation.]  The trial court may order a terminating sanction for discovery abuse 'after considering the totality of the circumstances:  [the] conduct of the party to determine if the actions were willful; the detriment to the propounding party; and the number of formal and informal attempts to obtain the discovery.'  [Citation.]  Generally, '[a] decision to order terminating sanctions should not be made lightly.  But where a violation is willful, preceded by a history of abuse, and the evidence shows that less severe sanctions would not produce compliance with the discovery rules, the trial court is justified in imposing the ultimate sanction.'  [Citation.]  Under this standard, trial courts have properly imposed terminating sanctions when parties have willfully disobeyed one or more discovery orders.  [Citation.]"  (*Los Defensores, Inc. v. Gomez* (2014) 223 Cal.App.4th 377, 390.)

"The question before us '"is not whether the trial court should have imposed a lesser sanction; rather, the question is whether the trial court abused its discretion by imposing the sanction it chose."'"  (*Liberty Mutual Fire Ins. Co. v. LcL Administrators, Inc.* (2008) 163 Cal.App.4th 1093, 1105 (*Liberty Mutual*).)

17

C.   *Analysis*

Plaintiffs contend that the judgments should be reversed based on 11 "compelling" reasons, some of which appear to be raised for the first time on appeal.  For purposes of our review, their contentions can be grouped into two general categories of trial court error:  findings unsupported by the evidence and abuses of discretion.  We address each contention below.

1.   Substantial Evidence

a.   Finding of Discovery Abuse

Plaintiffs argue that "the trial court's finding of discovery abuse warranting terminating sanctions" was not supported by substantial evidence.  According to plaintiffs, their obligation to respond to all written discovery did not arise until the court ordered them to respond to Normandie's discovery by March 1, 2021.  Thus, in their view, because they began providing responses only 18 days later, their violations of the court's orders were not egregious enough to warrant terminating sanctions.  We reject plaintiffs' characterization of the evidence concerning their discovery misconduct.

As to Dr. Anwar, he first sought discovery in January and April 2020, well over a year before plaintiffs first began to respond to it.  When plaintiffs failed to respond to the discovery as agreed, he made informal attempts to obtain compliance and was then required to move to compel responses.  The trial court ordered responses to that discovery on August 4, 2020, and September 22, 2020.  Responses were due under those orders no

later than September 4, 2020, and October 13, 2020.  But plaintiffs did not begin to provide any responses until the eve of the March 17, 2021, hearing on Dr. Anwar's terminating sanctions motion, months after they were due by order and only 60 days before the May 21, 2021, discovery cutoff.  And, plaintiffs did not fully comply with the court's orders until the eve of the May 19, 2021, hearing with only two days left before the discovery cutoff.  Those facts were more than sufficient to support the finding of discovery abuse as to Dr. Anwar's discovery.

Normandie first sought discovery from plaintiffs in May 2020, almost ten months before plaintiffs began providing responses to it.  Plaintiffs sought and obtained by agreement two extensions of time to respond, but they then failed to comply with the agreed-upon July 16, 2020, due date.  Normandie then demanded responses by August 18, 2020.  When that date passed without compliance, Normandie was forced to file four motions to compel on October 19, 2020.

Seven months after plaintiffs originally agreed to provide responses, the trial court granted Normandie's motions to compel and ordered responses by March 1, 2021; yet plaintiffs failed to comply by that date.  It was only after Normandie's March 16, 2021, threat to file its terminating sanctions motion that plaintiffs belatedly began the piecemeal process of compliance, providing responses to Normandie/Wilshire's first set of form interrogatories *only* on March 19, 2021; and they had not fully complied with the court's orders as of the May 19, 2021, hearing.  That evidence was sufficient to support the court's finding that plaintiffs had engaged in discovery abuse by failing to comply with its orders on Normandie's discovery.

19

b.     Finding of Willfulness

Plaintiffs next argue that there was "no substantial evidence presented that [their] violation of the trial court's orders was 'willful.'" According to plaintiffs, "the sheer number of interrogatories and document requests propounded by [defendants], which in and of themselves required greater than 19 days to properly respond to, along with other factors, including those caused by [defendants'] unmistakable 'tactics', made it impossible to comply with the court's February 10, 2021[,] order to complete [defendants'] discovery in 19 days."

As we have discussed above, plaintiffs had over a year, and not 19 days, to respond to discovery demands. Moreover, "'[a] willful failure does not necessarily include a wrongful intention to disobey discovery rules. A conscious or intentional failure to act, as distinguished from accidental or involuntary noncompliance, is sufficient to invoke a penalty. [Citation].'" (*Sauer v. Superior Court* (1987) 195 Cal.App.3d 213, 227–228.)

The evidence before the trial court demonstrated that (1) plaintiffs originally asked for, and received, two extensions of time to respond to each defendant's discovery, but they then knowingly failed to abide by their agreement; (2) they then had several additional months from the date they originally agreed to provide responses and the hearings on the motions to compel to prepare them; (3) during that time, they did not seek agreements to limit or consolidate the amount of responses required or seek a protective order to that effect; (4) they were aware of the court-ordered deadlines at or about the time they were set; (5) yet they only began to provide responses after the court-ordered deadlines had passed and they were facing motions for terminating

20

sanctions which they had not timely opposed; and (6) they had not fully complied with the obligations imposed by the court's orders by the time of the May 19, 2021, hearing. When viewed in a light most favorable to the court's finding, that evidence was sufficient to show that their violations were willful rather than accidental or involuntary.

### c. Finding of Failure to Comply

Plaintiffs maintain that "there was no substantial evidence presented that [plaintiffs] 'failed' to answer [defendants'] discovery." In their view, by the time of the May 19, 2021, hearing, they had responded to most, if not all, of the discovery subject to the trial court's orders. In light of that belated compliance, plaintiffs conclude that the terminating sanctions were in excess of what was required to achieve compliance with the court's previous orders.

Contrary to plaintiffs' assertion, there was evidence showing that, as of the May 19, 2021, hearing date, plaintiffs had not responded fully to Normandie's discovery, including its first sets of special interrogatories to each of the individual plaintiffs. And, as to Dr. Anwar's discovery, three individual plaintiffs had not yet responded to his first sets of document demands. More importantly, the court did not, as plaintiffs seem to suggest, grant the motions on the grounds that plaintiffs had not complied with its orders by the time of the May 19, 2021, hearing. Instead, the court found that "[d]efendants waited for the responses to basic discovery for over a year" and, given the timing of the delayed responses, "there [was] no opportunity for the typical follow-up discovery." As a result, "[d]efendants did not have the

21

benefit of timely discovery responses [to basic contention discovery] so that they could prepare their defenses." And, as to those findings, there was substantial evidence to support them, as detailed above.

### 2. Finding of Prejudice

Plaintiffs contend that there was insufficient evidence in the moving papers to support a finding of prejudice and that the evidence of prejudice in defendants' replies[9] was "simply . . . not credible." According to plaintiffs, despite Normandie's claims to the contrary, there was time for it to conduct follow-up discovery; and Dr. Anwar's assertions of prejudice from the lack of information on its omitted heirs theory was not credible because the statute of limitations on the omitted heirs' claims had run.

As to Normandie, there was evidence supporting an inference that the responses to its basic contention discovery were served too late to allow for typical follow-up discovery. The complaint contained multiple allegations against Normandie of

---

[9] To the extent plaintiffs contend that the trial court's order allowing further evidence of prejudice in reply was an abuse of discretion, we disagree. The court made its order in response to plaintiffs' request to file a late opposition. To accommodate that request, the court was required to continue the May 6, 2021, hearing on the terminating sanctions motions to allow time for replies. By that date, Dr. Anwar's motion had been pending since November 2020 and Normandie's had been pending since March 2, 2021, and plaintiffs had begun serving their responses. It was therefore reasonable to allow defendants to address prejudice in light of the belated responses they had received and the pending May 21, 2021, discovery cutoff.

22

negligence, recklessness, and violations of state and federal regulations governing skilled nursing facilities. Normandie focused much of its initial round of discovery on those issues, and it was undisputed that plaintiffs did not deliver the bulk of their responses to that discovery until the eve of the May 6, 2021, hearing date, and other responses were not received until the May 19, 2021, continued hearing date. It was also undisputed that the discovery cutoff for the June 21, 2021, trial was May 21, 2021. Given that timing, it was reasonable for the trial court to draw an inference of prejudice. Under the timeframes imposed by the Civil Discovery Act, Normandie could not propound follow-up written discovery to plaintiffs or subpoena third parties for documents or depositions, absent a trial continuance and extension of the discovery cutoff. The court's prejudice findings as to Normandie were therefore well supported by the record.

As to Dr. Anwar, his second round of written discovery sought information about Jimenez's prior medical history and the facilities and hospitals to which he was admitted prior to his admission to Normandie/Wilshire. Despite an August 2020 court order requiring them, responses to these foundational inquiries were not received until days before the discovery cutoff. Thus, Dr. Anwar's defense to the professional negligence claims was prejudiced because there was no time to follow-up on or test the sufficiency of the information provided. Dr. Anwar also did not receive information about six witnesses that were belatedly identified by plaintiffs two months prior to the discovery cutoff. And, when he attempted to conduct follow-up written discovery concerning the location and relationship of those witnesses, plaintiffs either refused to respond or objected. That evidence

supported an inference that plaintiffs' failure to timely comply with the trial court's August and September 2020 orders prevented Dr. Anwar from conducting follow-up discovery. The court's prejudice finding as to Dr. Anwar was therefore supported by the record.

### 3. Abuses of Discretion

#### a. Refusal to Consider Evidence

Plaintiffs contend that the trial court abused its discretion when it struck their second notice of lodgment containing plaintiffs' further responses to certain of Dr. Anwar's outstanding discovery. We disagree.

In a footnote to its order granting the terminating sanctions motion, the trial court noted that plaintiffs had filed, on the day before the hearing, a second notice of lodgment that appeared to include "additional responses to discovery." The court explained that because plaintiffs "were *not* granted leave to file any additional pleadings," the notice and lodgment were "stricken." The court added, however, that "[t]his late filing, even if considered, would not change the reasoning or result."

The record of the hearing on the motions does not support plaintiffs' assertion that the trial court failed to consider their late-filed responses when evaluating their excuses for delayed compliance. As noted above, the timing and substance of plaintiffs' last-minute responses to Dr. Anwar's discovery were not disputed issues in the parties' submissions or at the hearing. In any event, the court expressly stated that a consideration of

24

the filing would not change the result of its ruling. Therefore, plaintiffs cannot show prejudice.

In addition to the stricken responses, plaintiffs suggest that the trial court did not consider their other evidence on the justification issue, including evidence of: the volume of discovery responses involved in compliance; the two summary judgment motions filed by defendants; the two summary judgment motions filed in an unrelated matter and the appeal in another unrelated matter; the expert consultation required to respond to certain of the discovery; and the additional time required by the COVID-19 infections of two of counsel's family members. Contrary to plaintiffs' assertion, there is nothing in the record to suggest that the court did not consider plaintiffs' evidence and arguments on these issues. And, we presume the court properly exercised its discretion in light of those matters, absent an affirmative showing to the contrary by plaintiffs. (See *Landry v. Barryessa Union School Dist.* (1995) 39 Cal.App.4th 691, 698 ["We must presume the trial court's order was correct, and it is the plaintiff's burden to overcome that presumption and establish a clear abuse of discretion. [Citations.]"].)

###     b.     Reliance on Impermissible Factors

As to the judgment in favor of Dr. Anwar only, plaintiffs argue that the trial court considered "matters outside the permissible scope of its discretion." (Emphasis omitted.) According to plaintiffs, "the trial court placed special importance on the personal concerns of [Dr. Anwar] as related to his occupation as a medical doctor."

25

In its discussion of prejudice, the trial court considered the impact a continued trial date would have on Dr. Anwar's practice: "One additional item of prejudice. Dr. Anwar is board-certified in pulmonary and critical care medicine[] and has been responsible for caring for and treating critically ill and ventilator dependent COVID-19 patients. A further continuance will cause further litigation burden. Additionally, as noted in his reply, Dr. Anwar must disclose this lawsuit when he seeks to renew his hospital privileges and professional negligence insurance policies."

Although plaintiffs maintain that the burden imposed on Dr. Anwar's practice was a matter outside the scope of permissible factors that a court may consider when determining prejudice, they cite no authority for that proposition. Moreover, a court may issue a terminating sanction, but only "'after considering the totality of the circumstances,'" including "'the detriment to the propounding party . . . .'" (*Creed-21 v. City of Wildomar* (2017) 18 Cal.App.5th 690, 702.) Thus, the court did not abuse its discretion by considering the detrimental effect of a continuance on one of the propounding parties who would be directly impacted by the delay.

c.      Failure to Adhere to Established Law

Plaintiffs also contend that the trial court abused its discretion by failing to adhere to the established legal principles governing the issuance of terminating sanctions. According to plaintiffs, the court deviated from three of those principles by (1) issuing sanctions that were disproportional to the harm caused by their discovery abuse; (2) putting defendants in a better position than they would have been if they had the full

26

benefit of plaintiffs' compliance with the court's orders; and (3) failing to follow an incremental approach to sanctions, "starting with monetary sanctions and ending with the ultimate sanction of termination."

As an initial matter, the trial court followed an incremental approach to sanctions when it first imposed substantial monetary sanctions against all plaintiffs for their noncompliance with the basic discovery obligations imposed by the Civil Discovery Act. But that approach proved ineffective, as plaintiffs refused to timely comply with the orders mandating responses. It was not until defendants had filed terminating sanctions motions and the hearings were imminent that plaintiffs began their compliance efforts.

Moreover, as explained above, although a decision to issue terminating sanctions should not be made lightly, they can be warranted where a party has a history of discovery abuse, has willfully violated a court order compelling discovery, and there is evidence showing that a lesser sanction would not suffice. In such circumstances, the court has broad discretion to determine whether a lesser sanction would suffice to remedy the harm caused by the flaunting of the court's orders or whether terminating sanctions are warranted. (See § 2030.290, subd. (c) ["If a party then fails to obey an order compelling answers, the court may make those orders that are just, including the imposition of an issue sanction, an evidence sanction, or a terminating sanction . . ."]; *Liberty Mutual, supra*, 163 Cal.App.4th at p. 1102 [""In choosing among its various options for imposing a discovery sanction, a trial court exercises discretion, subject to reversal only for manifest abuse exceeding the bounds of reason"'; . . . ""[o]nly two facts are absolutely

27

prerequisite to imposition of the sanction:  (1) there must be a failure to comply . . . and (2) the failure must be willful . . .'""'].)

Here, as detailed above, it was undisputed that plaintiffs violated the trial court's discovery orders and there was substantial evidence supporting the court's finding that the violations were willful.  There was also substantial evidence supporting the court's finding that imposition of a lesser sanction would not suffice to remedy the harm cause by plaintiffs' noncompliance.  Plaintiffs ignored the monetary sanctions imposed against them and refused to provide responses until the last minute, despite court orders compelling them and pending motions seeking termination of the action.  The responses were then provided in piecemeal fashion, with many being delivered just before the discovery cutoff and just over a month from the trial date.  With no time for further discovery, defendants were facing trial without the benefit of responses to basic contention discovery and other information derived from follow-up investigation and discovery.  As the court noted, they were thus subject to being surprised at trial by evidence they would be unprepared to meet.  The court also implicitly rejected at oral argument plaintiffs' suggestion of a trial continuance, determining instead that a further continuance was not warranted and would be detrimental to Dr. Anwar.  And, plaintiffs did not urge the court to consider lesser sanctions, or request that the court impose the sanctions only against certain plaintiffs or only in favor of certain defendants, choosing instead to maintain that no sanctions were warranted.  Accordingly, the court's choice of terminating sanctions was supported by the record and was thus not beyond the bounds of reason.  (*Doppes v. Bentley Motors, Inc.* (2009) 174 Cal.App.4th 967, 992, fn. omitted

28

["where a violation is willful, preceded by a history of abuse, and the evidence shows that less severe sanctions would not produce compliance with the discovery rules, the trial court is justified in imposing the ultimate sanction'"].)

### d.     Issues not Raised Below

Plaintiffs raise three additional arguments, which they describe as "compelling reasons" for why the terminating sanctions order must be vacated.  First, they claim that defendants, such as Longwood, were not entitled to rely on discovery orders obtained by other defendants, such as Dr. Anwar or Normandie/Wilshire, as the basis for seeking terminating sanctions in their favor, and Longwood had served demands on some but not all of the plaintiffs.  Second, they argue that the court "treated the parties unequally with respect to adjustments that were necessary for everyone during the COVID-19 pandemic".  Third, they maintain that Normandie was guilty of unclean hands in responding to plaintiffs' discovery and was therefore barred from seeking relief against plaintiffs based on their own discovery abuse.

To the extent that plaintiffs contend that the sanctions orders should have been more specifically tailored as to the individual plaintiffs and defendants, they never raised this argument in the trial court.  Rather, plaintiffs collectively filed joint briefs and argued that none of the defendants were entitled to sanctions because plaintiffs had, in their view, substantially complied with their discovery obligations and no significant prejudice had been caused by their delays.  "'Appellate courts are loath to reverse a judgment on grounds that the opposing party

29

did not have an opportunity to argue and the trial court did not have an opportunity to consider. [Citation.] In our adversarial system, each party has the obligation to raise any issue or infirmity that might subject the ensuing judgment to attack. [Citation.]' [Citation.] "'The purpose of this rule is to encourage parties to bring errors to the attention of the trial court, so that they may be corrected." [Citation.]' [Citation.] [¶] Issues presented on appeal must actually be litigated in the trial court—not simply mentioned in passing. "'[W]e ignore arguments, authority, and facts not presented *and litigated* in the trial court.'" [Citation.]" (*Natkin v. California Unemployment Ins. Appeals Bd.* (2013) 219 Cal.App.4th 997, 1011 (*Natkin*).) Accordingly, plaintiffs have forfeited these arguments on appeal.

To the extent plaintiffs seek to have us reweigh the propriety of terminating sanctions in light of the relative import they place on certain factors, such as the discovery conduct of the moving parties, under the abuse of discretion standard, "we 'view the entire record in the light most favorable to the court's ruling, and draw all reasonable inferences in support of it. [Citation.] We also defer to the trial court's credibility determinations. [Citation.]'" (*Osborne v. Todd Farm Service, supra*, 247 Cal.App.4th at p. 51.) We do not determine ""whether the trial court should have imposed a lesser sanction; rather, the question is whether the trial court abused its discretion by imposing the sanction it chose."" (*Liberty Mutual, supra*, 163 Cal.App.4th at p. 1105.) And, in light of plaintiffs' willful failure to comply with the trial court's orders to respond to discovery, their consistent refusal to respond to defendants' demands, the failure of prior, substantial monetary sanctions to produce compliance, and defendants' demonstrated prejudice, we conclude the court did

30

not abuse its discretion in imposing the terminating sanctions here.

## IV.   DISPOSITION

The judgments are affirmed.  Defendants are awarded costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


KIM, J.


We concur:



BAKER, Acting P. J.



MOOR, J.


31